STATE OF MAINE
*vs.*
CHARLES M. ROBINSON

Cumberland.   Opinion, March 20, 1958.

*Arthur Chapman,*
*Clement Richardson,* for State.

*Bennett B. Fuller II,* for defendant.

SITTING: WILLIAMSON, C. J., WEBBER, BELIVEAU, TAPLEY, SULLIVAN, DUBORD, JJ.

WEBBER, J. On appeal. The respondent was tried by a jury and convicted of a violation of R. S., 1954, Chap. 134, Sec. 6. The statute reads: "Whoever, being 21 years or more of age, takes any indecent liberty or liberties or indulges in any indecent or immoral practice or practices with the sexual parts or organs of any other person, male or female, under the age of 16 years, either with or without the consent of such male or female person, shall, upon conviction thereof," (here follows the punishment). It has frequently been remarked that this offense is usually committed in secret and the charge is one easily made and difficult to defend. The very nature of the accusation is so abhorrent to the mind of the ordinary citizen that it is sometimes difficult for him to appraise the attempted proof with that cool and objective detachment which alone will suffice in any search for truth. Moreover, we have a natural inclination to assume the innocence and truthfulness of children of tender years, at least where sexual immorality is concerned. We would be naive indeed, however, if we failed to recognize that in a society which has discarded many of the social restraints of a former day, there are children who have acquired knowledge without wisdom and whose innocence and regard for truth have been undermined and sullied by their environment. Our review of the evidence here has convinced us that this is such a case. The quality of the evidence is not such as to carry conviction to a reasoning mind. The testimony of the two girls, aged ten and eleven respectively, upon which the State was forced to rely, disclosed many material inconsistencies. Their entire conduct before, during and after their encounter with the respondent was not such as to inspire confidence in their veracity. As a result, we are assailed by grave doubts, founded in reason, as to the guilt of this respondent. We are satisfied that no jury, once free from the influence of such passion and prejudice as might be engendered by the nature of the charge and the youth of the State's principal

witnesses, could fail to entertain similar doubts and for the same reasons.

On the day in question, the prosecutrix decided in the morning that she would not attend school but would "play hooky." Meeting her friend, she persuaded her to join in absenting herself from school. It appears from the later events of the day that they desired some spending money and formed the plan of visiting the respondent in order to get some. They had visited him before and admit that they had stolen money from his apartment. Both girls later acknowledged that he had never molested them and that nothing "bad" had ever happened on any of these prior visits. They arrived about 9 A.M. and were admitted by the respondent. They remained for about two hours. The girls admitted that the respondent admonished them for staying out of school and suggested that he might inform their mothers. The prosecutrix testified that she told him she was out of school because she wanted to be and that if he saw fit to tell her mother, he might "go ahead because it was too late to go to school." The girls first retired to the bathroom while the respondent worked at his desk. While there, the girls wrote three notes which are in evidence and which they subsequently handed to the respondent. These notes are couched in gutter language which is vulgar and coarse and constitute a solicitation to engage in sexual intercourse. If the respondent had a disposition to commit the unlawful acts of which he is accused, it would seem he would require no more enticement than was contained in the notes themselves. His response, however, was to write a note of his own which stated, "I still say you both are to (sic) young to be thinking of such things." We recognize that the writing of a note seems unusual conduct on the part of the respondent under such circumstances and may well have had an adverse effect in the mind of the jury. Yet we cannot overlook the fact that the content is in the nature of remon-

strance. Moreover, there is a clear indication from the note itself that on one or more prior occasions the children had displayed this preoccupation with sex and the respondent had given them the same advice. His remonstrance, although seemingly mild under the circumstances, indicated clearly that he entertained no thought of taking advantage of the situation created by the improper overtures of the girls. The evidence as to the events which followed is hopelessly confused. No useful purpose will be served by making the sordid details a part of this opinion. Suffice it to say that the version given by the two girls to the police on the day of the event was essentially different from that which they gave at the trial. Moreover, the stories told by the two girls at the trial are inconsistent with each other in many important respects. We think that if the respondent had done the acts of which he is accused, the impression on the minds of girls of this age would have been such that their memory of all but the trivia would have been essentially the same. The inconsistencies as to the very acts complained of bear the imprint of imagination and fabrication. On the other hand, the story told by the respondent remained unshaken and tended to reconcile consistently the events which all agree did occur.

There are other significant straws in the wind which tend to create a reasonable doubt as to the guilt of the respondent. If he had a consciousness of guilt, why did he not destroy the notes which became the State's most effective weapon against him? They were readily recovered from the waste basket by the police and obviously no effort had been made at concealment. One of the girls admitted she had lied to the respondent about a matter of secondary importance. She thereby displayed a light regard for truth which necessarily affects her credibility. If the version given by the prosecutrix, uncorroborated by her friend, and denied by the respondent, is to be believed, the girls had reason to ex-

pect that the respondent would give them some money before they left. However, they admittedly asked for no money before leaving and the respondent offered them none. On the contrary, they acknowledged that they ransacked drawers without the knowledge of the respondent and stole money before leaving the apartment. The girls were obviously reluctant to admit the exact amount which they had stolen. There is no claim by either girl that the respondent urged them to secrecy or made any effort to dissuade them from divulging the events of the morning. All of these facts seem more consistent with the innocence of the respondent than with his guilt.

As to the respondent, he was living in natural relationship with his wife who was at work on the day of these events. He is the owner of property and enjoys a good reputation in his neighborhood. Although he was presented with numerous opportunities, he had never shown any prior disposition to make any improper advances to either of these girls.

After leaving the apartment, the girls used the stolen money to attend a local theatre where they were found by the police late in the day. When the police inquired where they got the money for the theatre they made their first accusation against the respondent. Why then should these girls make false accusation against the respondent if in fact he had not molested them? We think that if one will but shed the illusions as to the purity of motive and innocence of all children which one would like to retain, the answer is not hard to find. These girls had during the day been guilty of both truancy and theft. They admitted that when the police found them they were in fear of punishment. However reluctantly, we must recognize that children who have shown themselves capable of moral depravity and wile to gain their ends and whose environment has already dulled the fine edge of conscience, are equally capable of awareness

and recognition that children can often avoid punishment by attracting sympathy. Just so it happened here. Once the hue and cry was raised against the respondent, all thought of punishment of these girls for their misconduct vanished. The seriousness of the accusation completely overshadowed the misdemeanors of the accusers and in place of punishment they were treated to a brief moment in the limelight. We are not without historical precedent for the proposition that some children display evidences of cunning and guile beyond their years. We need only recall the trials in an earlier century in Salem, Massachusetts, wherein the cruel fabrications of children sent many virtuous and innocent women to the gallows. Children are born with varying degrees of intellectual capacity. Beyond this their training and environment differ widely. When children become witnesses in court, we must be ever mindful that they are individuals, each with his own partially formed character, and that they do not automatically fall into any set pattern or mold merely because they are children. One may be truthful, innocent and modest—another knowing, sly and wilful. When it becomes evident that the child witness possesses the latter attributes, great care and caution must be exercised in order that a respondent may not be convicted on flimsy and insufficient evidence. See *State* v. *Ranger*, 149 Me. 52, 57. The evidence in this case, undermined by contradiction and inconsistency, falls far short of overcoming the presumption of innocence beyond a reasonable doubt.

The entry will be

*Appeal sustained.*

*New trial ordered.*