**STATE of Maine**

v.

**Donald A. DAVIS.**

Supreme Judicial Court of Maine.

Oct. 16, 1979.

Henry N. Berry, III, Dist. Atty., Peter G. Ballou, Asst. Dist. Atty., Portland, Barbara J. Mantigani (orally), Law Student, for plaintiff.

Daniel G. Lilley (orally), E. Paul Eggert, Portland, for defendant.

Before McKUSICK, C. J., and POMEROY, WERNICK, ARCHIBALD, GODFREY and NICHOLS, JJ.

WERNICK, Justice.

An indictment returned in the Superior Court (Cumberland County) charged defendant with two counts of unlawful sexual contact, in violation of 17–A M.R.S.A. § 255(1)(C) (Supp.1978).[1]

The sole support for the verdict of the jury was the uncorroborated story of the complainant concerning two incidents alleged to have occurred when she was nine years of age (about two years before trial was had in March in 1979). Complainant's testimony was that on two occasions in the summer of 1977, after having been requested by the defendant, she pulled down her pants and defendant touched her genital parts. The presiding Justice refused to al-

---

1. 17–A M.R.S.A. § 255 provides:

   "*1.* A person is guilty of unlawful sexual contact if he intentionally subjects another person, not his spouse, to any sexual contact, and

   "*C.* The other person has not in fact attained his 14th birthday and the actor is at least 3 years older; . . . ."

   17–A M.R.S.A. § 251(D) defines "sexual contact" as "any touching of the genitals, directly or through clothing, . . . for the purpose of arousing or gratifying sexual desire."

low in evidence testimony proffered on behalf of the defendant that the complainant had manifested undue curiosity regarding the human sexual organs, as more particularly manifested by a preoccupation to pull down, or have pulled down, the pants of other people. Appealing from the judgment of conviction, defendant asserts, as one of several points on appeal, that this evidentiary ruling was prejudicial error. We agree.

We therefore sustain defendant's appeal without need to reach the other issues raised regarding instructions to the jury.

Complainant's testimony was as follows. She was a neighbor of defendant and friendly with his children. On two occasions in the summer of 1977, the first time in June and the second time about three weeks later, she was playing with defendant's five year old child in the front yard of defendant's house. Defendant asked her to go with him into the garage. When they were inside the garage, defendant closed the garage door, pulled down his pants and asked complainant to pull down her pants. She did, and defendant then momentarily touched her genital parts. The first time this happened, defendant immediately pulled up his pants and left. The second time, defendant pulled up his pants and asked complainant to go with him to a bedroom on the second floor of his house. Complainant went as far as the bedroom, but then turned away and left the house. Thereafter, she continued to play at defendant's house, never mentioning the two incidents to anyone for about six months. She then told her mother. She waited so long, she testified, because she was "scared" her mother would be "mad" at her.

Two critical witnesses testifying on behalf of the defendant were his wife, Linda Davis, and one of his neighbors, Deborah Hopkins. During the direct examination of Mrs. Hopkins the presiding Justice ruled that he would not permit defense counsel to produce testimony by Mrs. Hopkins that she had forbidden her children to play with the complainant "because of her [complainant's] sexual activity with them." This proffered testimony was excluded on the ground that Mrs. Hopkins lacked personal knowledge of the matters. When he made this ruling, the Justice added the statement:

"If you can . . . provide a witness . . . [who] will testify as to personal knowledge of sexual proclivities of the . . . [complainant], I would say that is admissible."

Yet, when Linda Davis was testifying, the Justice refused to permit her to tell the jury about her personal knowledge of acts of sexual aggressiveness, and sexual curiosity, by the complainant relative to the Davis children. Defense counsel's offer of proof revealed that Mrs. Davis would have testified that on more than one occasion, the complainant had pulled down the pants of one of her sons, and that at another time she had attempted to sneak down to the bedroom of another son, located in the cellar of the Davis house, "to peek in on him."

In support of the admissibility of this proffered testimony, counsel for the defendant stated plainly to the presiding Justice that it was not being offered to show complainant's consent to the alleged acts of defendant; counsel recognized that her consent was irrelevant. Rather, the purpose of the proffered evidence was to inform the jury that the complainant had a preoccupation with sexual matters, thus to seek to prevent the jury from assigning to the complainant's testimony the kind of credibility they might otherwise give it because of the tendency to attribute an innocence in sexual matters to a child nine years of age. Despite this clarification of the purpose of the evidence, the presiding Justice refused to admit it, stating that he was

"not convinced that the child's sexual proclivities have any bearing upon her credibility in terms of fantasizing the same proclivities . . . ."

By so ruling in the particular circumstances of this case, the Justice committed reversible error. The excluded evidence related to the complainant's preoccupation with a significant part of that particular modality of sexual curiosity and expressive behavior that was so prominent in the com-

plainant's accusation against defendant. Defendant was thus subjected to the grave risk that, not being otherwise informed, the jury might regard a complainant of tender years as too innocent of sexual matters to think up the kind of sexual conduct she had described unless it was real and she had actually experienced it. In a similar setting (an indecent liberties prosecution), this Court recognized the danger, and its seriousness, observing:

> "The very nature of the accusation is so abhorrent to the mind of the ordinary citizen that it is sometimes difficult for him to appraise the attempted proof with that cool and objective detachment which alone will suffice in any search for truth. Moreover, we have a natural inclination to assume the innocence and truthfulness of children of tender years, at least where sexual immorality is concerned. We would be naive indeed, however, if we failed to recognize that in a society which has discarded many of the social restraints of a former day, there are children who have acquired knowledge without wisdom and whose innocence and regard for truth have been undermined and sullied by their environment." *State v. Robinson*, 153 Me. 376, 377, 139 A.2d 596 (1958).

The prejudice to defendant was aggravated, here, insofar as complainant's uncorroborated story contained internal elements that would render it suspect if it were an accusation made by a person other than a child of tender years. Nearly identical incidents were said to have happened on two occasions, three weeks apart. Each time there was only a momentary touching of complainant's genital parts. Defendant never again made any kind of sexual advance to the complainant, even though she did not mention the incidents to anyone for at least six months and, by continuing to come to defendant's house to play with his children, afforded him ample opportunity to make sexual approaches to her were he so inclined. Had the jurors been made aware of evidence that complainant manifested undue curiosity about the human sex organs, and had a proclivity concentrating on the pulling down of people's pants, their scrutiny of, and basic attitude toward, complainant's story as well as the testimony of defendant offered in his own behalf may well have been far different from the evaluation that was made in the absence of such evidence.

The prejudice to defendant was all the greater in this particular instance because there was evidence that complainant may have wanted to hurt defendant and might think in sexual terms to fabricate a story that would do him harm. Defendant testified that at times complainant had refused to comply with his directives, obeyed by the other children in the neighborhood who were using his swimming pool, to leave the pool and go home. On these occasions defendant was able to make complainant leave his house only by physically pulling her out of the swimming pool and sending her home. During one such incident the complainant made the remark to defendant that she wanted to, or would, pull his pants down, and he said to her:

> "you'd better watch out, somebody is going to pull yours down."

At other times, according to defendant's testimony, complainant would give defendant the "finger" as a "salute" and tell him to "suck it."

We must conclude, then, that in excluding the evidence proffered by defendant, the presiding Justice committed error seriously prejudicial to defendant.

The entry is:

Appeal sustained.

Judgment of conviction set aside.

Remanded to the Superior Court for further proceedings consistent with the opinion herein.

GLASSMAN, J., did not sit.