**Perry BENNINGTON, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

No. 2009–SC–000521–MR.

Supreme Court of Kentucky.

May 19, 2011.

Rehearing Denied Oct. 27, 2011.

Emily Holt Rhorer, Department of Public Advocacy, Frankfort, KY, Counsel for Appellant.

Jack Conway, Attorney General, Joshua D. Farley, Assistant Attorney General, Attorney General's Office, Office of Criminal Appeals, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Justice NOBLE.

Appellant, Perry Bennington, was convicted by a Bullitt County jury of multiple sex crimes against his daughter, T.R., which occurred over the course of fifteen years. He was sentenced to seventy years' imprisonment. He appeals his convictions on several grounds. One of his convictions, for first-degree rape, is reversed for insufficiency of the evidence, as conceded by the Commonwealth. The rest are affirmed.

## I. Background

Appellant's sex crimes against his daughter, T.R., stretched over a period of over fifteen years, beginning when she was six years old. Now over 40, T.R. testified at trial to the history of these events.

The first incident of sexual abuse T.R. could remember occurred in 1974. T.R. recalled Appellant holding her upside down and forcefully performing oral sex on her. T.R. informed her mother of what happened, and they briefly moved out of the house. But after being convinced by Appellant that it was actually T.R.'s uncles who had abused T.R., her mother agreed to move back in.

The next instance of sexual misconduct occurred three years later, in 1977, when T.R. was nine. This time Appellant touched T.R. sexually. Once again T.R. and her mother left home because of the incident but also again, after persuasion by Appellant, soon returned.

The next incident T.R. recalled happened in 1982. Appellant pulled her out of bed, took her to his room, and performed oral sex on her. This time, when T.R. informed her mother of what had occurred, the mother left by herself, checking into Our Lady of Peace Hospital. While the mother was gone, Appellant would pull T.R. out of bed every night after she fell asleep and perform oral sex on her.

T.R. further testified that as she turned fourteen years old, Appellant continued this same pattern of behavior, performing oral sex on T.R. "all the time." Sexual intercourse began that year as well. After Appellant observed T.R. talking to a young boy, he beat her so hard he was afraid he had seriously injured her and then, after determining she was okay, forcefully initiated sexual intercourse. T.R. recalled that after the first instance of sexual intercourse, it recurred every night thereafter.

When T.R. was fifteen years old, she became pregnant with Appellant's child. This child died at nine months old, but Appellant went on to father two more children through T.R. T.R. testified that between the ages of fifteen and 22, sexual activity between her and her father occurred on a daily basis.

At age 22, T.R. finally fled home, but did not pursue criminal charges against her father. Eventually in 2007, when her own daughter was being molested, T.R. came forward to authorities and disclosed her sexual past with Appellant. Appellant was indicted on five counts of first-degree sodomy, three counts of first-degree rape, and six counts of incest. One count of sodomy was later amended to first-degree sexual abuse to conform to the evidence presented at trial.

Appellant was convicted on all four counts of sodomy, two as first-degree and two as third-degree; one count of first-degree sexual abuse; all three counts of rape, one as first-degree and two as third-degree; and all six counts of incest. During the penalty phase, the court discovered that "first-degree sodomy" was not a crime in 1974, when one of the first-degree sodomies Appellant was convicted of occurred. Thus, with approval of both parties, the court applied the penalty from the most analogous crime then existing in 1974, "Indecent or Immoral Practices with Another," KRS 435.105 (repealed), to Appellant's conviction on that count. The jury awarded the maximum penalties on each count and the court, running some convictions concurrently and some consecutively, issued an aggregate sentence of 70 years.

Appellant now challenges his conviction and sentence before this Court as a matter of right. Ky. Const. § 110(2)(b).

## II. Analysis

Appellant raises numerous arguments on appeal. First, he claims that his prose-

cution and conviction under the first-degree sodomy statute for conduct predating that statute is palpable error. Second, he argues that he was denied a unanimous verdict as a result of unspecific language in the instructions. Third, he alleges that there was insufficient evidence underlying virtually every count, thus mandating a directed verdict in his favor. Fourth, he argues that the refusal of the court to order certain discovery requests was reversible error. Finally, he contends that the exclusion of evidence calling into question T.R.'s description of her mother checking into Our Lady of Peace Hospital served to prevent him from presenting a defense at trial.

### A. Indecent or Immoral Practices with Another

 Appellant claims that his conviction for first-degree sodomy for oral sex with his daughter alleged to have occurred in 1974 is flawed because he was indicted, prosecuted, and convicted under KRS 510.070, which did not go into effect until 1975. He argues that he should have been indicted instead under a statute in effect in 1974. He also claims, with little explanation, that his conviction under these circumstances violates the ex post facto and due process clauses of the United States and Kentucky Constitutions. However, Appellant did not object to this alleged error at trial.

The indictment on the count in question read: "That during the year 1974 ... the above named Defendant committed the offense of Sodomy in the First Degree by engaging in deviate sexual intercourse with [T.R.], a female less than twelve years of age." That this presented a potential problem was raised by the prosecutor when the case was called for trial. The prosecutor told the trial court that the sodomy statute did not go into effect until January 1, 1975, but that the indictment still stated a crime under the law in effect

in 1974 and that he was trying to get a copy of the 1974 statute. Appellant's counsel stated that he had no response at that time, but that he might raise the matter in the future. The jury was instructed and convicted Appellant under KRS 510.070, without objection.

The issue was not raised again until the penalty phase. The trial court had done some research into the older statutes and found that the closest crime existing in 1974 was indecent or immoral practices with another, under KRS 435.105 (now repealed), which was punishable by a lesser sentence, one to ten years, than first-degree sodomy, which would be a class A felony under the circumstances. The trial court then instructed the jury as to the penalty range for indecent or immoral practices instead of that for sodomy, which resulted in a ten-year sentence.

Appellant lodged no objection to this remedial measure at trial and did not raise the issue at any other time before this appeal. His claim, therefore, is reviewable only as palpable error. *See* RCr 10.26; *see also Martin v. Commonwealth*, 207 S.W.3d 1, 3 (Ky.2006) ("This Court reviews unpreserved claims of error on direct appeal only for palpable error.").

That at least a technical error occurred in this case is without question. The offense of which Appellant was convicted was created as part of the Penal Code, specifically KRS 510.070, which went into effect in 1975. But KRS 510.070 could not serve as the basis of a criminal conviction for behavior occurring prior to its enactment:

The provisions of this code shall not apply to any offense committed prior to January 1, 1975, notwithstanding the provisions of KRS 446.110. Such an offense must be construed and punished according to the provisions of law existing at the time of the commission there-

of in the same manner as if this code had not been enacted.

KRS 500.040(1).

■■■■ However, mere technical error does not necessarily require reversal, especially where the error was not preserved for appellate review and thus only results in reversal if it is palpable and prejudicial. To reverse because of a palpable error, an appellate court must find that "manifest injustice has resulted from the error." RCr 10.26; *see also Martin,* 207 S.W.3d at 3. "[T]he showing is probability of a different result or error so fundamental as to threaten a defendant's entitlement to due process of law." *Martin,* 207 S.W.3d at 3. Or, as stated elsewhere in *Martin,* palpable error exists when "the defect in the proceeding was shocking or jurisprudentially intolerable." *Id.* at 4.

To decide whether the result likely would have been different had the alleged error not occurred in this case, this Court must determine whether the act that Appellant committed was criminalized prior to the time it was committed, whether a conviction under the prior statute would have occurred, and whether Appellant was sentenced in conformity with any penalties prescribed at the time of the offense.[1]

The first question is whether Appellant's conduct was considered criminal in 1974. At that time, the various sexual offenses were classified differently than under the modern Penal Code. But while the various names of the offenses changed with the enactment of the Code, very little, if any, previously innocent conduct was criminalized. Appellant's 1974 conduct was covered by KRS 435.105(1), which read:

Any person of the age of seventeen (17) years or over who carnally abuses the body, or indulges in any indecent or immoral practices with the body or organs of any child under the age of fifteen (15) years ... shall be guilty of a felony, punishable on conviction thereof by imprisonment in the penitentiary for not less than one (1) year nor more than ten (10) years.

Whereas the Penal Code proscribes "deviate sexual intercourse" with minors, see KRS 510.070—.090, the now repealed KRS 435.105 condemned "carnally abus[ing] the body, or indulg[ing] in any indecent or immoral practices with the body or organs of any child under the age of fifteen (15) years." Deviate sexual intercourse includes oral sex. *See* KRS 510.010(1). The question, therefore, becomes whether "carnal abuse" and "indecent and immoral practices" also covered such activity. Or, conversely, do the terms mean something different?

Both phrases are to a large extent antiquated and euphemistic. They were polite attempts to describe the prohibited conduct indirectly. This makes them difficult to readily define.

"Carnal abuse" was at least a commonly used phrase, both in cases and statutes, and is included as an entry in *Black's Law Dictionary.* Recent editions include the term, but do not define it, and instead cross-reference and equate the term to "sexual abuse" under the definition of "abuse." *See Black's Law Dictionary* 10, 226 (8th ed.2004). A more contemporaneous edition, published in 1968, actually defined the term: "An act of debauchery of

---

1. Answering these questions will also answer whether an ex post facto violation or due process violation based on the ex post facto clause even occurred. *See Collins v. Youngblood,* 497 U.S. 37, 49–50, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990) (noting that a conviction would violate the bar on ex post facto laws only if the law under which defendant was prosecuted increased the punishment for the illegal behavior, or if it made previously legal behavior illegal or altered the definition of the offense to Appellant's disadvantage).

the female sexual organs by those of the male which does not amount to penetration...." *Black's Law Dictionary* 268 (4th ed.1968). That definition, however, states that the term "carnal abuse" is included under "carnal knowledge" when the victim is a child, *id.*, though "carnal knowledge" ordinarily refers to intercourse with penetration, *see id.* (defining "carnal knowledge" as "[c]oitus; copulation; ... sexual intercourse").[2]

The phrase "indecent or immoral practices" was less commonly used. Though use of the phrase to describe criminal sexual behavior was not unique to Kentucky law, it appears that only a few other states employed it. *See, e.g., People v. Groszman–Bagrati,* 202 N.Y.S.2d 572, 573 (N.Y.City Ct.1960) (discussing a New York statute that criminalized both "carnally abus[ing] the body of a child" and "indulg[ing] in any indecent or immoral practice with the sexual parts or organs of any such child, in a manner other than by an act of sexual intercourse"); *State v. Robinson,* 153 Me. 376, 139 A.2d 596, 596 (1958) (noting Maine statute criminalizing "tak[ing] any indecent liberty or liberties or indulg[ing] in any indecent or immoral practice or practices with the sexual parts or organs of any other person ... under the age of 16 years"). The rarity of this phrase is underscored by its complete omission from the last seven editions of *Black's Law Dictionary,* though similar phrases are defined. *See, e.g., Black's Law Dictionary* 783 (8th ed.2004) (defining

"indecent assault" as "sexual assault" and "indecent liberties" as "[i]mproper behavior, usu. toward a child, esp. of a sexual nature").

More helpful is an examination of Kentucky case law contemporaneous with the statute, where "carnal abuse" or "indecent immoral practices" were found. But this, too, has its limits, since this Court's predecessor was apparently uncomfortable describing the details of the crimes, preferring instead to maintain the use of euphemisms or simply not to describe the crimes at all. *See, e.g., Dixon v. Commonwealth,* 487 S.W.2d 928, 929 (Ky.1972) (noting the ages of the offender and victim and nothing else but that "[t]he victim's testimony clearly established the criminal offense charged and positively identified Dixon as the offender").

From those few Kentucky cases actually describing the offenses, however, it appears that the terms used in KRS 435.105 covered sexual contact other than intercourse, which was itself defined as "carnal knowledge" and was the basis for other crimes, such as carnal knowledge of a child under KRS 435.100, also now repealed.[3] "Carnal abuse" and "indecent and immoral practices," therefore, included a wide range of sexual conduct. For example, a defendant's "rub[bing] his hand over [a girl's] breasts and between her legs" was held to be carnal abuse. *Faulkner v. Commonwealth,* 343 S.W.2d 581, 582 (Ky. 1961). In that case, "the child's testimony

---

**2.** The third edition, published in 1944, includes almost identical definitions. *See Black's Law Dictionary* 282 (3d ed.1944).

**3.** That there is a difference between the two under Kentucky law is unquestionable. *See Lair v. Commonwealth,* 330 S.W.2d 938, 940 (Ky.1960) ("The instant charge on which appellant was convicted is a violation of KRS 435.105, which was enacted in 1948. This statute created the distinct offense of indecent and immoral practices by a person over sev-

enteen years of age with a child under fifteen regardless of sex or consent. KRS 435.100 was enacted to protect infants, either male or female, under the age of eighteen years from being carnally known, while KRS 435.105 is directed to the protection of infants under the age of fifteen years against indecent and immoral practices by one over the age of seventeen years. Each is directed to a specific but different social problem and constitutes a separate and distinct offense.").

concerning the manner in which the private parts of her body were molested, was sufficient to support a finding that appellant had carnally abused her in the normal meaning of those words." *Id.* at 583.

This Court's predecessor also held that oral sexual contact violated KRS 435.105. *Edwards v. Commonwealth,* 500 S.W.2d 396, 398 (Ky.1973).[4] Specifically, the defendant's "forc[ing] the victims to perform an oral sexual act" violated the statute. *Id.* The Court stated that "[w]hile 'indecent and immoral practices' may be committed in many ways, we cannot conceive of any person who would characterize [the defendant's] offense as anything other than 'indecent and immoral.'" *Id.; see also McDonald v. Commonwealth,* 569 S.W.2d 134, 135 (Ky.1978) (defendant convicted of "indecent or immoral practices" for forcing his wife to have oral sex).[5]

Indeed, oral sexual contact with a child was, by itself, sufficient to constitute a crime. The Commonwealth was not required to demonstrate any specific intent (e.g., lustful) to prove a violation of KRS 435.105. "The carnal abuse of a child is a crime without regard to the reasons or the intent with which it was done." *Hatfield v. Commonwealth,* 473 S.W.2d 104, 106 (Ky.1971).

Based on these authorities, this Court concludes that Appellant's behavior was criminalized in 1974. Specifically, his behavior was criminalized by KRS 435.105.

The next question is whether there is a substantial probability that Appellant would not have been convicted if he had been indicted and prosecuted under the now repealed statute. The crime of indecent or immoral practices, when committed through an oral sexual assault on a child, is essentially the same crime as first-degree sodomy. The proof at trial would have been the same. The Commonwealth would not have been required to prove any additional factual elements, such as a mental state. No reasonable jury would have failed to convict Appellant under KRS 435.105 where it was willing to (and did) convict him under the modern sodomy statute. There is no probability of a different result.

Finally, this Court must examine whether Appellant received a different punishment than he would have under KRS 435.105. This is easily answered by the fact that the trial court presciently decided to sentence Appellant under KRS 435.105 rather than KRS 510.070.

 From this, we conclude that Appellant has not demonstrated a palpable error. Justice Cunningham argues that regardless of palpability, the defective indictment, failing to specify the appropriate indecent or immoral practices charge and naming the modern statute, placed this crime beyond the court's jurisdictional grasp, thereby imposing a structural bar to conviction. It is established precedent, however, that a defective indictment can be waived. *See Strong v. Commonwealth,* 507 S.W.2d 691, 692 (Ky.1974). "The deficiency could easily have been cured in response to a timely objection...." *Id.* As Justice Cunningham points out, all the Commonwealth would have had to do is reindict Appellant on this count or, with

---

4. *Edwards* does not state the age of the victims or whether the prosecution was under subsection (2) of KRS 435.105, which applies when the victim is over age fifteen. Regardless, both subsections criminalized the same behavior—carnal abuse or indecent or immoral acts—and differentiated the level of punishment based on the age of the victim.

5. The Court in *Edwards* also held that despite its use of euphemistic language to describe the prohibited acts, KRS 435.105 was not unconstitutionally vague. *Edwards,* 500 S.W.2d at 398.

his consent, charge him by information. However, not only did Appellant refrain from objecting, but he affirmatively declared his consent to proceed with sentencing under the terms of the applicable statute. Absent any manifest injustice, it would be unfair to allow Appellant, through his consent, to bait the Commonwealth into continuing with sentencing, only to now turn around and seek a second chance on this charge.

▇ In any event, this charge was properly under the jurisdiction of the court. It is the allegation of criminal conduct, not the correct naming of an offense, that activates a court's jurisdiction. The indictment's allegation of "deviate sexual intercourse with . . . a female less than twelve years of age"—conduct now known as sodomy but previously called indecent or immoral practices—satisfies this requirement. This adequately described conduct that was criminalized in 1974, meaning the indictment was not void on its face and Appellant was given adequate notice of the charged criminal conduct. The circuit court's jurisdiction was, therefore, properly and sufficiently invoked by the indictment in this case.

It is true, however, that the final judgment ought to have reflected the technically applicable offense and statute that Appellant was actually sentenced under, and not the contemporary crime of sodomy that was stated in the indictment. Yet this technical error by the trial court need not require this Court to throw out the baby with the bathwater. Appellant was tried under an indictment describing conduct that was criminalized in 1974. He was also sentenced in conformity with the 1974 statute. The only correction necessary is amendment of the judgment to reflect the proper name of the offense. We, therefore, need only remand to the Bullitt Circuit Court with instructions to amend its judgment to reflect that Appellant's conviction was for the crime of indecent or immoral practices with a child under the age of fifteen in violation of KRS 435.105.

## B. Unanimous Verdict

▇ Appellant next contends that he was deprived of his right to a unanimous verdict by the lack of specificity in jury instructions. He did not object to this alleged lack of specificity at trial, so this issue is also reviewed only for palpable error. RCr 10.26.

Appellant points to the similarity of instruction on counts 3–5 (sodomy); counts 6–8 (rape); and counts 9–14 (incest). The three sodomy instructions are virtually identical; the three rape instructions are virtually identical; and the six incest instructions are virtually identical. Appellant complains that these virtually identical instructions could have given rise to a nonunanimous verdict as in *Miller v. Commonwealth*, 283 S.W.3d 690, 695–96 (Ky. 2009). In *Miller*, "because the trial court used identical jury instructions on multiple counts of third-degree rape and sodomy, none of which could be distinguished from the others as to what factually distinct crime each applied to, [Miller] was presumptively prejudiced." *Id.* It was impossible to ascertain which particular rape and sodomy the jury was convicting of on each count, or even if all jury members were convicting him of the same rape and sodomy. *Id.* Thus, the defendant in *Miller* was deprived a unanimous verdict.

The critical distinction between *Miller* and the case at bar, however, is that the instructions here are not truly identical. The exception to this identity is that each sodomy, rape, and incest is uniquely identified by the particular year when it occurred: Instruction 3 refers to a sodomy between May 1981 and May 1982; instruction 4 to a sodomy between May 1982 and May 1983; instruction 5 to a sodomy be-

tween May 1983 and May 1984; instruction 6 refers to a rape between May 1981 and May 1982; instruction 7 to a rape between May 1982 and May 1983; instruction 8 to a rape between May 1983 and May 1984; instruction 9 refers to incest between May 1984 and May 1985; instruction 10 to incest between May 1985 and May 1986; instruction 11 to an incest between May 1986 and May 1987; instruction 12 to an incest between May 1987 and May 1988; instruction 13 to an incest between May 1988 and May 1989; and instruction 14 to an incest between May 1989 and May 1990.

Each instruction refers to a factually distinct crime. While the instructions do not detail the specifics of each particular instance of sodomy, rape, and incest, such as the setting or the exact conduct engaged in, such detail is not required. There is no uncertainty as to which crime the jury convicted of on each count and thus, no deprivation of a unanimous verdict.

### C. Sufficiency of the Evidence

Appellant next takes issue with the sufficiency of the evidence underlying the convictions.

■ Appellant first argues that there was insufficient evidence supporting counts 4 and 5, under which he was convicted of third-degree sodomy. Count 4 charges Appellant with engaging in oral sex with T.R. when she was fourteen years old, and count 5 when she was fifteen years old. Appellant's basis for this argument is unclear. T.R. specifically testified that when she was fourteen years old, oral sex occurred "all the time." She further testified that once she turned fifteen, sexual activity—both vaginal and oral—took place daily. Clearly, such victim testimony was sufficient to convict Appellant of these crimes.

Appellant next questions the sufficiency of the evidence for the rape convictions under counts 6 and 8. The Commonwealth concedes the insufficiency of evidence to convict Appellant of the rape described in count 6 (May 1981–May 1982) due to the absence of testimony that sexual intercourse had begun by that point. As such, his conviction on that count is reversed.

■ However, as to Appellant's conviction under count 8, for raping T.R. between May 1983 and May 1984, when she was fifteen years old, there was indeed sufficient evidence. Once again, T.R.'s testimony that from the time she turned fifteen, sexual activity—both vaginal and oral—occurred daily, suffices.

■ Appellant also challenges the incest convictions on sufficiency of the evidence grounds. These six convictions relate to the incestual sexual activity engaged in by Appellant from the time T.R. was sixteen until she was 21. Yet again, the Commonwealth met its burden of providing sufficient evidence to support these charges through T.R.'s testimony that from the time she turned fifteen until she left home at age 22, sexual intercourse occurred daily. This testimony was fully sufficient to support the six convictions for incest.

### D. Discovery Requests

Following initial discovery proceedings, Appellant filed two additional discovery requests, for a bill of particulars and for T.R.'s medical records. These were both denied, at least in part, by the trial court and are raised on appeal.

Appellant sought a bill of particulars regarding the rape, sodomy, and incest charges. The trial court granted this motion with respect to counts 1 and 2 of sodomy, which charged isolated events oc-

curring in 1974 and 1977. It denied a bill of particulars on the remaining allegations because they represented a continuous course of conduct of sodomy, rape, and incest instead of isolated events.

 "It is a basic premise of the law that the granting of a bill of particulars, after an indictment has been returned addresses itself to the sound discretion of the trial court which will not be overturned on appeal unless there is an abuse of this discretion." *Deskins v. Commonwealth*, 512 S.W.2d 520, 524 (Ky.1974); *see also* RCr 6.16. The decision to grant the bill of particulars on the two isolated instances of sodomy, but not on the rest, was a proper exercise of the trial court's discretion. Because the remaining instances of sodomy, rape, and incest occurred frequently, or even daily for some time, the Commonwealth did not intend to focus on specific occurrences. Indeed, T.R. did not describe them in any further detail at trial, simply explaining that those crimes continuously occurred in each year. It might well have even been impossible for her to distinguish isolated instances of this continuing course of conduct. Having received a statement setting forth all details that T.R. could recall, Appellant was on satisfactory notice. No bill of particulars was needed for him to prepare a defense. *See Sussman v. Commonwealth*, 610 S.W.2d 608, 612 (Ky.1980).

 Appellant also made an unsuccessful discovery request for T.R.'s prenatal care records, pediatric records, and obstetrics/gynecology records. He claims that these materials could have contained exculpatory evidence for his defense. Specifically, he suggests that these records might have contained statements that someone else was her father or that someone else abused her.

The trial court was well justified in denying Appellant's request. According to Kentucky's rules of criminal procedure, a defendant may obtain discovery only "upon a showing that the items sought may be material to the preparation of the defense." RCr 7.24(2). Appellant made no showing why T.R.'s medical records may contain statements about Appellant not being her father or evidence of other abusers.

Appellant argues that regardless of Kentucky's discovery rules, he had a constitutional right to obtain the records. However, in all the cases cited by Appellant for constitutional support of this discovery request, the defendant had failed to receive an actual document known or likely to contain specific information alleged to be exculpatory. *See, e.g., Brady v. Maryland*, 373 U.S. 83, 84, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) (suppression of confession of third party, discovered after trial); *United States v. Bagley*, 473 U.S. 667, 671, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985) (suppression of contracts between the United States and its witnesses to provide information related to the defendant's prosecution, which were discovered following trial pursuant to FOIA demands). In fact, in the lone Kentucky Supreme Court case cited by Appellant on this matter, the Court held that discovery of a victim's psychotherapy records is permitted "only upon receipt of evidence sufficient to establish a reasonable belief that the records contain exculpatory evidence." *Commonwealth v. Barroso*, 122 S.W.3d 554, 564 (Ky.2003).

Admittedly, discovery of psychotherapy records may be treated differently than ordinary medical records due to the explicit psychotherapist-patient privilege in the rules of evidence. *See* KRE 507(3). Still, there is no constitutional right to discover any records absent some showing why the materials sought might reasonably contain information helpful to one's defense. Here, Appellant has provided no concrete

proof that the information he sought to obtain would actually be found in the hospital records. His quest for exculpatory evidence was purely speculative. If such pure speculation were sufficient grounds for discovery, the scope would be limitless and the process neverending. Such a result is not authorized by rules of procedure or mandated by any constitutional provision.

### E. Impeachment Evidence

██ Appellant's final challenge arises from the Court's refusal of his attempt to introduce Our Lady of Peace's records to prove that T.R.'s mother had never been admitted as a patient there. Appellant was not permitted to introduce the hospital records because he could not authenticate them.

While admitting he should have called a custodian of the records as a witness to authenticate the documents, Appellant suggests that KRE 803(7) exempts him from this requirement. That evidentiary rule, however, has nothing to do with authentication; it is an exception to the hearsay rule. Whether or not these documents are excepted from hearsay, and indeed whether or not they are relevant at all (or purely collateral), they still must be authenticated to be admitted at trial. KRE 901. Authentication is a separate requirement for admissibility. Appellant failed to meet this requirement and the court, therefore, acted properly in denying admission of the records into evidence.

### III. Conclusion

For the aforementioned reasons, the conviction on count 6, first-degree rape, is reversed. All other convictions are affirmed and this case is remanded to Bullitt Circuit Court for modification and re-entry of judgment consistent with this opinion.

MINTON, C.J.; ABRAMSON, SCHRODER and VENTERS, JJ., concur.

CUNNINGHAM, J., concurs in part and dissents in part by separate opinion in which SCOTT, J., joins.

CUNNINGHAM, J., concurring in part and dissenting in part:

I concur in most all of the majority opinion. However, I take strong exception to this Court's affirming the conviction and sentence on Count One to the 1974 crime. I recognize that, in this case, it will not substantially affect the ultimate sentence. However, I firmly believe that the serious flaw in the Court's reasoning will bode ill in future cases.

Actually, the majority's handling of this narrow issue strikes me as being unusual and bordering on the bizarre. We hold today that a trial judge can change one criminal charge to another after a person has been tried on the first charge.

This is not a matter of palpable error as addressed by the majority. Nor is the error "technical" unless we consider the whole subject of jurisdiction as being technical. The trial court never acquired jurisdiction over the offense for which Appellant was sentenced. And all agree that the court did not have jurisdiction of the 1974 act under the sodomy in the first degree statute. That statute was not enacted until 1975.

To recap succinctly, Appellant was charged with and convicted of sodomy in the first degree for a 1974 crime. Yet, there was no sodomy in the first degree crime in 1974. The prosecutor knew of this problem before the case was tried, but inexplicably charged on. After conviction and before sentencing, the prosecutor and judge went to work looking for a crime that existed in 1974 which seemed to fit the facts of the case. They found it in the old KRS 435.105—"indecent or immoral practices with another." Pull the first-degree sodomy offense on which the jury

had already voted and slip in "indecent or immoral practices with another." So, Appellant was convicted of sodomy in the first degree under KRS 510.070 and sentenced under KRS 435.105 for another crime.

That, to me, is slightly bizarre.

As it stands, this case holds that the circuit court can take jurisdiction of any felony at any time it pleases—as long as the facts developed in the case fit the crime.

The majority spends almost eight pages in its opinion attempting to show that the old crime is, in essence, the same as the new sodomy in the first degree felony. That exhaustive analysis seems irrelevant to me since we are talking about jurisdiction. With that said, no history lesson on the two crimes is needed. They are distinguishable on their face. Under the old law, KRS 435.105, this crime cannot be committed by a juvenile less than seventeen years of age. And the victim must be under fifteen years of age. Pursuant to KRS 510.070, under which Appellant was convicted, a person of any age can commit the crime and the victim has to be under the age of twelve. Certainly, they are "different offenses" as intended by RCr 6.16.

"The court may permit an indictment, information, complaint or citation to be amended at any time before verdict or finding *if no additional or different offense is charged....*" RCr 6.16. (Emphasis added). Clearly, different offense was charged in this case for sentencing.

The issue is addressed in *Crouch v. Commonwealth,* 323 S.W.3d 668 (Ky.2010). There, the defendant was charged with theft of identity, but he asked that the indictment be amended, charging him with the offense of giving a false name to a peace officer. This Court affirmed the Court of Appeals holding that the trial court could not amend the indictment be-

cause it would result in the defendant being charged with an entirely different offense. The Court said:

> [A] trial court lacks jurisdiction to change a valid indictment except as provided by Kentucky Rules of Criminal Procedure (RCr) 6.16. RCr 6.16 provides in pertinent part that a court "may permit an indictment, information, complaint or citation to be amended any time before verdict or finding *if no additional or different offense is charged* and if substantial rights of the defendant are not prejudiced." (Emphasis in original).

*Id.* at 672.

Clearly, changing the charge against Crouch from the felony offense of theft of identity to the misdemeanor charge of giving a false name to a peace officer would have resulted in Crouch being charged with an entirely different offense. So the trial court properly denied Crouch's request to modify the indictment.

In *Coleman v. Commonwealth,* 501 S.W.2d 583, 584 (Ky.1973), the defendant was indicted for murder, convicted of voluntary manslaughter, and sentenced to twenty-one years. He made a motion to amend the indictment from murder to homicide occurring in the course of striking, stabbing or shooting. In response to the motion, the Court said: "A trial court has no authority to amend an indictment to charge an additional or different offense, RCr 6.16. This has been the rule in this Commonwealth for a great number of years, see *Commonwealth v. Adams,* 92 Ky. 134, 17 S.W. 276 (1891)."

There are only two ways that a circuit court in Kentucky acquires jurisdiction of felony cases—through grand jury indictment or by information. Neither method was used in this case for the crime in question.

RCr 6.02(1) states: "All offenses required to be prosecuted by indictment pursuant to Section 12 of the Kentucky Constitution shall be prosecuted by indictment unless the defendant waives indictment by notice in writing to the circuit court, in which event the offense may be prosecuted forthwith by information." Appellant was never indicted under KRS 435.105, nor waived "indictment by notice in writing to the circuit court" before his conviction.

Justice Graves speaks to this issue in the important case of *Malone v. Commonwealth*, 30 S.W.3d 180, 183 (Ky.2000):

> A criminal prosecution requires the existence of an accusation charging the commission of an offense. *Such an accusation either in the form of an indictment or an information, is an essential requisite of jurisdiction.* In Kentucky, subject matter jurisdiction over a felony offense may be invoked either by a grand jury indictment or by information in cases where the individual consents. (Emphasis added).

In *Malone,* our Court simply upheld the proposition that a defendant may waive a grand jury indictment and be charged by information. It simply follows RCr 6.02. Either an indictment or information is required. There is no other way.

The *Malone* case makes clear that there is a peculiar twist in regard to the prosecution of felonies. It is a subject matter jurisdictional question. But it is one instance where jurisdiction can be waived. Waiver does not come into play here for two reasons. The charge was not changed before the prosecution and conviction, but afterwards—way too late for any waiver. Secondly, any acquiescence to be sentenced under a different statute was never given in writing as required by RCr 6.02.

In this case, the prosecution would not have been able to amend the indictment, even before trial, since it charged a separate offense and not a lesser included.

The proper procedure would have been to re-indict Appellant or charge him on this count by information if he consented—which would have been likely since it was one of several charges for which he stood trial.

Today, this Court, by judicial fiat, has created a third way for the circuit court to gain jurisdiction over criminal cases—indictment, information, and *agreement.* In doing so, we have totally eviscerated RCr 6.02(1)—the rule for proceeding by information. That rule now becomes no more necessary than the human appendix. We have also held that an indictment can be amended, even if it charges a different crime—a practice proscribed by RCr 6.16.

The importance of this error gets lost in this case because of numerous charges and sentences. However, I respectfully submit that it will loom large somewhere down the road. I, therefore, dissent only in regard to Count One and concur in what is otherwise a very fine opinion.

SCOTT, J., joins.