**Robert Eugene DENNIS, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

No. 2008–SC–000049–MR.

Supreme Court of Kentucky.

March 18, 2010.

Erin Hoffman Yang, Assistant Public Advocate, Department of Public Advocacy, Frankfort, KY, Counsel for Appellant.

Jack Conway, Attorney General of Kentucky, Kenneth Wayne Riggs, Assistant Attorney General, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Justice ABRAMSON.

Robert Dennis appeals as a matter of right from a Judgment of the Daviess Cir-

cuit Court sentencing him to sixty-five years in prison following a jury determination that he had sodomized and sexually abused S.J., his stepdaughter. Dennis, who denied having had any sexual contact with his stepdaughter, claims the trial court erred by excluding evidence that S.J. had on a prior occasion made a false accusation of sexual abuse against other persons. We reject Dennis's claim on the record as it now stands but agree with him that he was entitled to have the trial court inspect Cabinet for Health and Family Services (CHFS) records pertaining to the prior accusation and to have released to him any records bearing on the falsity of S.J.'s prior allegations. Because the requested records were never produced for the court's review, we vacate the judgment and remand for the trial court's consideration of those materials. In evaluating the admissibility of prior accusations, the trial court must first determine whether they have been shown to be demonstrably false, and if so, it must then consider the probativeness of the evidence pursuant to KRE 608(b). If the evidence is "probative of truthfulness or untruthfulness," it must still pass the balancing test in KRE 403 in order to be admissible. As we discuss *infra*, depending upon the outcome of the court's review of the CHFS materials, Dennis may be entitled to a new trial but, alternatively, should there be no additional admissible evidence, his prior judgment is to be reinstated by the trial court.

## RELEVANT FACTS

The Commonwealth's evidence established that S.J. was born in January 1995 and that she has a sister, L.A., who is about eleven years her elder. S.J.'s parents separated in about 1999, and her mother began residing with Dennis in about 2001. Her mother and Dennis married in 2003. They resided with S.J. in a small trailer on First Street in Owensboro, where L.A. would occasionally stay with them for a week or two at a time. The charges against Dennis arose in March 2006, when S.J., then eleven years old, informed her mother that Dennis had subjected her to acts of anal and oral sodomy, the last such act having occurred the previous December. S.J.'s mother took her to the emergency room, where hospital personnel referred S.J.'s allegations to the Owensboro Police.

S.J. eventually told police investigators and investigators from CHFS that Dennis's abuse had continued sporadically for about four years. At trial, although unsure of the dates, she testified in considerable detail to three acts of sodomy and to another incident when Dennis placed his mouth on her breast. She testified that during one of the acts of anal sodomy a neighbor had walked in on them and had appeared shocked. The neighbor, James Goins, testified that he had entered Dennis's trailer to offer Dennis a beer and had found Dennis sitting in a chair holding S.J. on his lap. According to Goins, Dennis had his hand up S.J.'s dress and was rocking her back and forth. When Dennis realized that Goins was there, he screamed at him to get out.

Two witnesses testified for the defense. Dennis denied having had any sexual contact with S.J. and claimed that her allegations had been instigated by her sister, L.A. Dennis maintained that L.A. resented him as a stepparent and had had numerous conflicts with him. The last such conflict, he testified, occurred just a few days before S.J. made her allegations. L.A. had been making one of her occasional stays in the household, and, frustrated by her unwillingness to help around the house, Dennis and S.J.'s mother had insisted that she leave. According to Dennis, this made L.A. very angry. A few days later, L.A. stopped by to visit with S.J. Dennis testi-

fied that the two girls spent about a half hour locked in the bathroom and about a half hour after L.A. left S.J. made the allegations against him. Dennis claimed that Goins, the neighbor, also bore a grudge against him after a recent fight.

S.J.'s mother testified on Dennis's behalf and generally confirmed his testimony concerning L.A. In particular, she seconded his testimony that L.A. had visited S.J. shortly prior to S.J.'s allegations. L.A. and S.J. testified, however, that L.A. had not visited that day. S.J. testified that, although Dennis had never overtly threatened her, she had said nothing about his abuse because she was afraid of him. She had finally decided to speak up, however, because she concluded that if she did not the abuse would continue.

As noted, the jury rejected Dennis's defense and found him guilty of three counts of first-degree sodomy and one count of first-degree sexual abuse. The jury recommended twenty-year sentences for each sodomy count and five years for the sexual abuse count, all to be served consecutively, for a total sentence of sixty-five years. The trial court imposed the recommended sentence.

Dennis contends on appeal that his defense was unduly impaired by the exclusion of evidence that in about 2001, when S.J. was five or six years old, she accused her father, along with her sister, L.A., and L.A.'s boyfriend, of touching her vaginal area inappropriately after a dog had jumped on her lap and licked or scratched her groin. Apparently S.J. told her mother about the incident, and she reported it to the police. Police and CHFS investigators eventually determined that no wrongdoing could be substantiated, and so the matter was dropped.

Prior to trial, Dennis sought discovery of CHFS records pertaining to that 2001 incident and also moved *in limine* to be al-

lowed to impeach S.J.'s veracity with what he characterized as proof of that prior false allegation of sexual misconduct. The trial court granted the discovery request, with limitations that will be explained below, but following a KRE 104 admissibility hearing in which testimony was offered by a CHFS investigator and S.J.'s mother, disallowed any evidence at trial concerning S.J.'s 2001 allegations. Dennis complains that the trial court mishandled the discovery matter by failing to obtain for the court record and then to review those potentially exculpatory materials. He further contends that the trial court erred by excluding the evidence he had of S.J.'s prior false allegations. Although on the record before us we reject this latter contention, we agree with Dennis that he was entitled to have the trial court inspect the records which CHFS failed to produce. Consequently, we must remand for those records to be acquired, if they exist, and then reviewed and handled in the manner described herein.

## ANALYSIS

**I. On The Existing Record, Dennis Was Not Entitled To Cross–Examine S.J. Concerning The 2001 Incident Because the Allegations Were Not Demonstrably False.**

Prior to trial, Dennis sought to explore the circumstances surrounding the 2001 episode when S.J. apparently complained that a dog had jumped on her lap and that afterward her father, her sister, and her sister's boyfriend had touched her inappropriately. CHFS investigated that incident, but was unable to substantiate any impropriety and consequently closed its file. As noted, at the KRE 104 admissibility hearing, Dennis called the CHFS investigator involved in the 2001 incident and S.J.'s mother. Dennis claimed that S.J. fabricat-

ed the earlier complaint and contended that he should be permitted to use evidence of that prior fabrication to impeach S.J.'s truthfulness and thereby cast doubt on her claims against him. The trial court denied Dennis's motion, finding the allegations were not demonstrably false.

Dennis correctly notes that KRE 608 permits an attack on a witness's credibility and that under KRE 608(b) that attack may take the form of cross-examination about specific instances of conduct if, in the court's judgment, the specific instances are "probative of truthfulness or untruthfulness."[1] The rule cautions, however, that "[n]o specific instance of conduct of a witness may be the subject of inquiry under this provision unless the cross-examiner has a factual basis for the subject matter of his inquiry."

 Dennis also relies on KRE 404, which provides in relevant part for the introduction of evidence concerning either a victim's or a witness's character, including his or her character for truthfulness.[2]

(a) Character evidence generally. Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except:

\* \* \*

(2) Character of victim generally. Evidence of a pertinent trait of character of the victim of the crime offered by an accused, other than in a prosecution for criminal sexual conduct, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor;

(3) Character of witnesses. Evidence of the character of witnesses, as provided in KRE 607, KRE 608, and KRE 609. Although KRE 404(a)(2) suggests that an accused cannot introduce character evidence regarding the victim of criminal sexual conduct, this language is generally viewed as a reference to KRE 412, the rape shield law, which "governs the admissibility of such a victim's behavior and reputation for past sexual behavior." Underwood and Weissenberger, *Kentucky Evidence Courtroom Manual* 125 (2009–2010 ed.). The rape shield provision in KRE 412 prohibits, except in carefully delineated circumstances, the admission of evidence (1) "offered to prove that any alleged victim engaged in other sexual behavior" or (2) "offered to prove any alleged victim's sexual predisposition." With respect to a witness's character for truthfulness, KRE 404(a)(3) merely incorporates KRE 608, and thus does not provide for

1. KRE 608(b) provides in pertinent part:

Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness: (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which charac-

ter the witness being cross-examined has testified. No specific instance of conduct of a witness may be the subject of inquiry under this provision unless the cross-examiner has a factual basis for the subject matter of his inquiry.

2. With respect to the victim's character, however, KRE 405 in pertinent part limits the admissible evidence to testimony "as to general reputation in the community or by testimony in the form of opinion." That rule does not allow for evidence of a victim's specific instances of conduct.

any rights in addition to those created by the latter rule.[3]

■ These rules, moreover, like the other rules providing for the admission of evidence, are all subject to the KRE 403 balancing test, which permits the exclusion of otherwise admissible evidence "if its probative value is substantially outweighed by the danger of undue prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." The probative value of the prior allegation, therefore—both its factual basis and its materiality—is of crucial importance to the admissibility determination.

■ Under these and similar rules, numerous courts, both federal and state, have held that the credibility of the complaining witness in a sex crime case may be attacked by cross-examination concerning a prior false accusation. This is so notwithstanding the fact that such an attack implicates KRE 412, the rape shield rule. Pursuant to that rule, as noted above, evidence that the alleged victim of sexual misconduct "engaged in other sexual behavior" is generally not admissible in any proceeding involving the alleged misconduct. False allegations of abuse, however, do not involve "other sexual behavior," and thus evidence of such false allegations is not barred by the rape shield rule and may be admitted in accord with the other rules of evidence. See Lawson, *Kentucky Evidence Law Handbook* § 2.30[7] (4th ed. 2003) (noting that drafters of federal rape shield rule did not intend for it to apply to false accusations and the federal courts have interpreted it accordingly). See also Nancy M. King,

*Impeachment or Cross–Examination of Prosecuting Witness in Sexual Offense Trial by Showing that Similar Charges were Made Against Other Persons,* 71 A.L.R.4th 469 (1989). To insure that the rape shield rule is not circumvented, however, the proponent of such evidence is required to make a preliminary showing that the prosecuting witness made a prior accusation and that the accusation was in fact false. *State v. Guenther,* 181 N.J. 129, 854 A.2d 308 (2004) (collecting cases); *United States v. Kenyon,* 481 F.3d 1054 (8th Cir.2007).

Courts have differed in the standard of proof the defendant must satisfy to make this preliminary showing. Some permit cross-examination about the matter if the defendant establishes the false allegation by a preponderance of the evidence. *Guenther, supra; Morgan v. State,* 54 P.3d 332 (Alaska App.2002). Some have required a showing by clear and convincing evidence. *State v. Brum,* 155 N.H. 408, 923 A.2d 1068 (2007). Some require "a reasonable probability of falsity." *State v. Barber,* 13 Kan.App.2d 224, 766 P.2d 1288 (1989). Some require "strong and substantial proof of actual falsity." *State v. Quinn,* 200 W.Va. 432, 490 S.E.2d 34 (1997). Others, including our own Court of Appeals, have required that the prior accusation be shown to be "demonstrably false." *Capshaw v. Commonwealth,* 253 S.W.3d 557 (Ky.App.2007) (*citing Hall v. Commonwealth,* 956 S.W.2d 224 (Ky.App. 1997)); *Blair v. State,* 877 N.E.2d 1225 (Ind.App.2007); *State v. Casillas,* 145 N.M. 783, 205 P.3d 830 (N.M.App.2009); *State v. Maxwell,* 172 Or.App. 142, 18 P.3d 438 (2001).

**3.** KRE 404(b), of course, allows for the introduction of evidence of other crimes, wrongs, or acts not to prove a person's general character, but as proof of some particular fact such as a person's motive, intent or plan.

Dennis does not claim, however, that S.J.'s purportedly false prior accusation is evidence of anything but her tendency not to tell the truth.

In *Hall*, our Court of Appeals justified a heightened standard of proof by opining "evidence of this nature is without a doubt extremely prejudicial. Its admission would undermine the purpose of KRE 412, shifting the focus from the real issues, and effectively put the victim on trial." *Id.* at 227. Similarly, at least one commentator has argued that to further the important purposes of the rape shield rule, it is fair to require the defendant to establish by clear and convincing evidence that he is not probing prior sexual behavior but only prior dishonesty. Bopst, *"Rape Shield Laws and Prior False Accusations of Rape: The Need for Meaningful Legislative Reform,"* 24 J. Legis. 125 (1998). We recently noted the *Hall* "demonstrably false" standard in *Kreps v. Commonwealth,* 286 S.W.3d 213 (Ky.2009), but without considering the propriety of that standard emphasized that evidence of false prior accusations remains subject to KRE 403's probative value-prejudicial effect balancing test and held that the prior-accusation evidence in that case was properly excluded under this latter rule.

The *Hall* panel did not attempt to define "demonstrably false" beyond saying that prior allegations could not be inquired about unless they were "proven" or "admitted" to be false. 956 S.W.2d at 227. The Court of Appeals did not indicate what proof of falsity would suffice, but it did hold in the case before it that the alleged perpetrators' denials of the allegations and the decision by the investigating agency (and apparently the victim herself) not to press charges were by themselves insufficient. Numerous courts have similarly held that an alleged perpetrator's self-serving denial and a merely inconclusive investigation are not sufficiently probative of falsity to remove a prior allegation from the strictures of the rape shield rule. King, *supra,* 71 A.L.R.4th 469.

■ The standard of proof question is complicated, moreover, by the fact that evidence of an alleged victim's prior false accusations implicates not just the evidence rules but also the defendant's right under the Confrontation Clause of the Sixth Amendment to the United States Constitution to subject the witnesses against him to meaningful cross-examination. The rules of evidence, of course, may not be construed so as to usurp that right, and thus, although the United States Supreme Court has emphasized that state and federal rule makers have broad latitude "to establish rules excluding evidence from criminal trials," *United States v. Scheffer,* 523 U.S. 303, 308, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998), and that trial judges enjoy wide latitude "to impose reasonable limits on cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant," *Delaware v. Van Arsdall,* 475 U.S. 673, 679, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986), the Court has also declared that that latitude has limits: "Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense.... This right is abridged by evidence rules that infring[e] upon a weighty interest of the accused and are arbitrary or disproportionate to the purposes they are designed to serve." *Holmes v. South Carolina,* 547 U.S. 319, 324, 126 S.Ct. 1727, 164 L.Ed.2d 503 (2006) (citations and internal quotation marks omitted).

"Arbitrary" rules, the Court explained in *Holmes,* are those "that exclude[ ] important defense evidence but that d[o] not serve any legitimate interests." *Id.* at 325,

126 S.Ct. 1727. In determining whether an exclusion is "disproportionate," other courts have weighed "the importance of the evidence to an effective defense, [and] the scope of the ban involved," *White v. Coplan*, 399 F.3d 18, 24 (1st Cir.2005) (*citing Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974) and *Van Arsdall, supra*), against any prejudicial effects the rule was designed to guard against. *Barbe v. McBride*, 521 F.3d 443 (4th Cir.2008); *LaJoie v. Thompson*, 217 F.3d 663 (9th Cir.2000).

Under this "arbitrary or disproportionate" standard, the Fourth Circuit Court of Appeals has held that the exclusion of prior allegation evidence where the only proof of falsity was the alleged perpetrator's denial did not run afoul of the defendant's constitutional rights. *Quinn v. Haynes*, 234 F.3d 837 (4th Cir.2000). In *White v. Coplan, supra*, on the other hand, the First Circuit Court of Appeals held that the exclusion of prior-allegation cross-examination did violate the federal constitutional rights of a defendant convicted of sexually assaulting two sisters, ages eight and twelve, where these was evidence of falsity beyond the alleged perpetrators' denials. Both girls had previously accused a neighbor of assaulting them and ultimately the neighbor had been acquitted by a jury. In addition, the older girl had accused a cousin of assault but had subsequently recanted those allegations, allegations which the police had investigated and found inconsistent with "background facts". *Id.* at 22. Finally, the younger sister had made an allegation against a man named "Mac" who was never identified or located in an ensuing investigation. Evidence of these allegations was not admitted because although the New Hampshire Supreme Court found them false to a "reasonable probability" they did not meet the state's higher "demonstrably false" standard. Although the First Circuit, on habeas corpus review, made clear that in its view a heightened standard of proof in these prior-allegation cases is not unconstitutional per se, it held that a "demonstrably false" standard could be unconstitutional in a particular application as it was on "the peculiar facts" of that case.[4] *Id.* at 26. The *White* Court noted the vital importance of impeachment in a case that turned almost entirely on the alleged victims' credibility, and opined that the evidence of prior falsity (at least as to the allegations of which the neighbor was acquitted and the allegations against the cousin which were recanted and unsubstantiated by investigation) was substantial enough that cross-examination concerning it "could easily have changed the outcome." *Id.* at 25. *Cf. Delaware v. Van Arsdall*, 475 U.S. at 680, 106 S.Ct. 1431 (holding that the Confrontation Clause was violated where the defendant was denied cross examination from which "[a] reasonable jury might have received a significantly different impression of [the witness's] credibility . . . .").

▪ With this constitutional background in mind, we turn again to KRE 412. Rape shield rules, the United States Supreme Court has recognized, serve the legitimate purpose of protecting the victims of sex crimes "against surprise, harassment, and unnecessary invasions of privacy." *Michigan v. Lucas*, 500 U.S. 145, 150, 111 S.Ct. 1743, 114 L.Ed.2d 205 (1991) (upholding against constitutional

---

4. The three-judge panel specifically noted that in *Ellsworth v. Warden*, 333 F.3d 1, 6 (2003), the First Circuit sitting en banc held that a constitutional challenge to the demonstrably false standard would be "an uphill struggle", noting "the confrontation clause objection is pretty well limited to extreme cases where the state restriction is patently unreasonable." 399 F.3d at 26.

challenge the application of a 10–day notice provision in Michigan's rape shield law to preclude the accused from presenting evidence of his prior sexual relationship with the accuser). They also enhance the fairness of trials by excluding irrelevant character evidence highly apt to distract and confuse the jury. We agree with the Court of Appeals in *Hall* that to prevent these important purposes from being undermined or circumvented, evidence, including cross-examination, concerning an alleged sex-crime victim's allegations of sexual impropriety against another is not admissible at trial unless the proponent of the evidence establishes at a KRE 104 hearing that the prior accusation was demonstrably false. To meet that standard, the proponent must show that there is a distinct and substantial probability that the prior accusation was false. This heightened standard of proof is meant to exclude the evidence where the proponent's only proof of falsity is the alleged perpetrator's denial and/or an inconclusive investigation of the allegation. Self-serving denials and investigations that do not exonerate but merely fail to substantiate are not sufficiently probative of falsity to justify breaching the alleged victim's shield. Applying the shield and excluding the evidence where there is no proof that the prior allegations were "demonstrably false" is neither arbitrary nor disproportionate.

■ This demonstrably false standard should be applied so as to balance the Commonwealth's and the victim's interest in excluding collateral character evidence against the defendant's interest in confronting the victim with evidence genuinely and significantly bearing on his or her credibility. So applied, the standard the Court adopts today does not create an impassable barrier for prior-allegation evidence. For example, the victim's recantation of the prior allegation, an investigation which establishes pertinent facts wholly inconsistent with the allegation, or circumstances strongly suggesting that the victim had a motive to fabricate the prior and current allegations are all instances potentially justifying confrontation on this issue. We reiterate, however, as we explained in *Kreps, supra,* that even if the prior allegation is demonstrably false and thus not barred by KRE 412, the evidence is still subject to other evidence rules, including KRE 608 and KRE 403, and may be limited or excluded as those rules require, consistent, of course, with constitutional restraints.

With respect to KRE 608, we note, finally, that that rule permits a witness to be cross-examined with specific incidents of conduct, but expressly precludes the introduction of extrinsic evidence regarding that conduct. *Purcell v. Commonwealth,* 149 S.W.3d 382 (Ky.2004). Under what rule or rules and under what circumstances, if any, extrinsic evidence of a prior false accusation would be admissible are questions we leave for another day.

■ At the pre-trial admissibility hearing in this case, Dennis sought to establish the falsity of S.J.'s 2001 accusation by questioning the CHFS employee who investigated that case and ultimately dismissed it. The investigator explained that S.J., only five or six years old at the time, never clearly articulated exactly what happened after the dog jumped in her lap. She said only that her father, sister, and her sister's boyfriend had then examined and touched her groin. The adults all denied the incident and thought that S.J. was referring to a time when she had wet herself and one or more of them had helped to wash her. The investigator concluded that a dog probably had jumped on S.J.'s lap, but that it could not be substantiated that the adult response, if any, was

sexual in nature. The trial court ruled that for the purposes of KRE 608 and 404(a)(3) this testimony, even in conjunction with evidence that the six-year-old S.J. had had a lively imagination, did not amount to proof of falsity. We agree.

The investigator's testimony established no more than that the alleged perpetrators had denied any wrongdoing and that otherwise the allegations could not be substantiated. Indeed, the investigator believed that something probably had happened with the dog and that S.J.'s (or her mother's) interpretation of how the adults reacted may simply have been mistaken, although even that much could not be substantiated. Even under a preponderance of the evidence standard, much less the demonstrably false standard we announce today, this evidence is not sufficient to show that the 2001 incident amounted to a false accusation. On the record currently before us, therefore, the trial court did not abuse its discretion by disallowing cross-examination with respect to that incident.

As explained more fully *infra*, however, the record in this case must be supplemented. On remand, Dennis is entitled to production of CHFS's records regarding the 2001 incident, if there are any, and to have the trial court inspect them. If, notwithstanding the investigator's testimony, those records establish demonstrable falsity, if the evidence is "probative of truthfulness or untruthfulness" pursuant to KRE 608(b), and if that evidence survives the KRE 403 balancing test, then Dennis must be granted a new trial at which he will be allowed to cross-examine S.J. about the 2001 false report. A retrial would be required in that event because the evidence against Dennis was not so overwhelming that impeachment of S.J. with a duly established false prior accusation would not, within a reasonable probability, have altered the outcome. *Pennsylvania v. Rit-*

*chie,* 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987).

 Finally, Dennis contends that even if he is not entitled under the Kentucky Rules of Evidence to impeach S.J. with the purportedly false 2001 accusation, he is entitled to do so under the Sixth Amendment's Confrontation Clause. This argument was not presented to the trial court and in any event in light of the foregoing discussion regarding the balancing of a defendant's Sixth Amendment rights and the legitimate state interests advanced by our evidentiary rules it is patently without merit. Dennis sought to make a general attack on S.J.'s credibility by showing that she had fabricated a dissimilar abuse accusation in the past. He was unable, however, to establish the falsity of the prior accusation by even a preponderance of the evidence. No court has held that the Constitution requires the admission of purported general credibility evidence for which there is no factual predicate. Simply put, invocation of the United States Constitution does not save Dennis from his failure to prove the falsity of S.J.'s 2001 report.

## II. The Trial Court Erred By Failing To Obtain And Review Potentially Material CHFS Records.

 When Dennis learned of the 2001 incident in which S.J. raised concerns that she had been inappropriately touched, he made a pretrial motion to inspect CHFS records pertaining to that incident. Because CHFS is an agent of the Commonwealth, in a criminal case its records are subject to discovery under RCr 7.24. *Anderson v. Commonwealth,* 864 S.W.2d 909 (Ky.1993). Because the Cabinet's records are otherwise confidential, however, under KRS 194A.060, the parties agreed that the records would initially be disclosed to the trial court for an *in camera*

inspection. The court would then turn exculpatory or otherwise discoverable materials over to the defense and would place the remainder of the Cabinet's records under seal. This is a procedure deemed constitutionally adequate in *Pennsylvania v. Ritchie, supra,* and *Commonwealth v. Barroso,* 122 S.W.3d 554 (Ky.2003), and was the procedure employed under RCr 7.24 in *Anderson, supra.*

Accordingly, the trial court ordered CHFS to "produce all records concerning the minor child, [S.J.], and deliver same" to the trial court. The order was meant to reach *all* records concerning S.J., including those from the 2001 investigation, but as the record forwarded to this Court under seal discloses, CHFS produced only those records from the then-pending 2006 investigation of Dennis. It may be, of course, that records from 2001 no longer existed and that the 2006 records were indeed all of the records CHFS had concerning S.J. Because Dennis was particularly interested in the 2001 records regarding S.J.'s earlier allegations of abuse, however, he was entitled to know whether such records existed and if they did to have the trial court inspect them. When CHFS's response to the trial court's discovery order included nothing from 2001, the trial court should have supplemented its order with a specific request for the 2001 materials. Instead, the trial court apparently overlooked the absence of those materials and determined merely that the 2006 records included nothing bearing on the 2001 allegation and were in no other way exculpatory. Although our own examination of the 2006 materials convinces us that the trial court did not abuse its discretion by deeming them non-discoverable, we agree with Dennis that the trial court erred when it failed to pursue the 2001 records. Accordingly, we must vacate Dennis's judgment and remand this matter for an inspection of the 2001 records, if they exist, and for a new trial if those records contain evidentiary material such that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Pennsylvania v. Ritchie,* 480 U.S. at 57, 107 S.Ct. 989.

### CONCLUSION

In sum, KRE 608 permits the cross-examination of a sex crime victim concerning a prior false accusation if the prior accusation is shown to be demonstrably false, if the accusation is "probative of truthfulness or untruthfulness," and if the prior accusation evidence otherwise survives KRE 403's probative value balancing test. In this case, Dennis's proof of falsity did not satisfy the demonstrably false standard and thus the trial court properly disallowed cross-examination concerning the prior accusation. Dennis was entitled, however, to have the trial court inspect CHFS records pertaining to the prior accusation and to release to him records bearing materially on the falsity issue. Because that inspection did not take place, we must remand the matter to the trial court so that it may obtain those records, if they exist, and then determine if they contain evidence (or could lead to evidence) sufficiently probative of falsity to satisfy Dennis's burden and if so to grant Dennis a new trial. If there are no additional records regarding the 2001 incident or if they do not contain sufficiently probative evidence of falsity, then the judgment against Dennis shall be reinstated. Accordingly, we vacate the January 4, 2008 Judgment of the Daviess Circuit Court and remand for proceedings consistent with this Opinion.

All sitting. All concur.