# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, RAP 40(D), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED:  AUGUST 24, 2023
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2022-SC-0079-MR

DAVID WECKMAN, JR. **APPELLANT**

V.

ON APPEAL FROM JEFFERSON CIRCUIT COURT
HONORABLE ERIC JOSEPH HANER, JUDGE
NO. 19-CR-000947

COMMONWEALTH OF KENTUCKY **APPELLEE**

## MEMORANDUM OPINION OF THE COURT

### AFFIRMING

Appellant, David Weckman, was convicted by a jury of two counts of first-degree rape of a child less than twelve years old and two counts of incest of a child less than twelve years old.  Weckman was sentenced to twenty years on each count, to run concurrently, consistent with the jury's recommendation, and he now appeals as a matter of right.  After review, we affirm the judgment.

### FACTS AND PROCEDURAL HISTORY

This matter involves allegations of sexual abuse between a father and his biological daughter.  The victim in this case AW,[1] spent much of her childhood in Glasgow, Kentucky with her maternal grandparents.  After reporting sexual abuse by her maternal grandfather at the age of eight, she was moved by a

---

[1] We refer to the child victim by these initials to protect her identity.

family court judge into Weckman's custody. Thereafter, AW lived with her biological father, Weckman, and her stepmother, Jenny, in Louisville, Kentucky. The three of them were temporarily living with Weckman's father and stepmother. Weckman was working on renovating a trailer in Radcliff, Kentucky where he eventually planned to live with his family.

AW had a difficult relationship with Jenny who faulted Weckman for not disciplining AW appropriately. Alternatively, Jenny tried to assume authority by limiting AW's access to her own cell phone as a punishment. For his part, Weckman repeatedly secretly allowed AW to access the cellphone without Jenny's knowledge. Weckman alleged that AW used her cellphone to visit pornography and adult dating sites, but AW testified that it was Weckman who showed her pornography online.

On October 15, 2017, AW disclosed to Jenny that Weckman exposed himself to her and asked her to touch his penis when they were alone at the trailer in Radcliff. Jenny confronted Weckman about the incident, but he ignored her. Jenny sent Weckman text messages on four separate occasions asking him about the abuse, but Weckman refused to discuss the allegations with Jenny or AW.

On November 7, 2017, AW got in a fight with another student at school. At the time of this incident, AW was 11 years old. She testified that she then missed the bus on purpose to stay behind and speak with her teacher. AW used the time to disclose to her teacher that her father, Weckman, raped her twice in recent weeks. She explained that the first incident occurred sometime

2

on or near Halloween when AW went upstairs to retrieve her candy from her father's bedroom.  The second incident happened the Saturday before her disclosure (November 4, 2017), when she went to the bedroom to retrieve her phone from her father's hiding place.  Weckman had a practice of putting AW's phone under his mattress when Jenny had taken it from her as punishment.  The Commonwealth believed Weckman required her to come to his bedroom to use her phone or have access to her Halloween candy as a form of manipulation to get her to come to his bedroom.

After AW disclosed the incidents to her teacher, the school contacted the police.  The Shively Police responded and took AW to the hospital to be examined for evidence.  Upon examination, there was no physical evidence of rape.  In addition, AW had no physical injuries.  The doctor who examined AW testified that this is not uncommon given the circumstances AW reported.  That same day when Weckman's father went to pick up AW from school, school officials told him AW had been in a fight at school and was in the hospital.  They did not tell him about the disclosure or why she was taken to the hospital.  Weckman's father communicated this information to Weckman and Jenny.

Without knowing why AW was in the hospital, only having information she had been in a fight that day, Weckman texted Jenny "I swear if she has said anything that me or dad has done anything this is going to be a lot of shit started and she will go to a fucking foster home and I will lose her."  He

followed up, "Now I'm fucking scared that either me or dad will be locked up for shit she is saying or doing because she likes to lie about shit."

Detective Ricky Guffey of the Shively Police Department responded to the call from the hospital about AW. Detective Guffey spoke to AW and she reported that her father had raped her twice. The description of both rape incidents contained factual differences, but generally involved Weckman pushing her down on his bed, putting his penis in her vagina, moving it around, ejaculating in a napkin, and threatening what would happen if she told.

Detective Guffey interviewed Weckman later that day and Weckman denied the rape allegations. In the interview, Weckman denied that AW had access to her phone when it had been taken by her stepmother as punishment. When Detective Guffey informed him that they had indeed found the phone under his mattress, Weckman alleged he had no idea how it got there. He changed his story several times throughout the interview. He continued the same pattern in a second interview with Detective Guffey nearly a year and a half later.

After her disclosure, AW was placed in the custody of several residences in the foster care system supervised by Child Protective Services ("CPS"). There are CPS records from this time frame, which was after the sexual assaults, indicating AW struggled with lying and attention-seeking in her home placements. Although challenging their relevance, the prosecution turned 58 pages of CPS records over to the trial court judge for an *in camera* review. The

4

judge determined that the records did not contain exculpatory evidence and did not need to be given to Weckman for use in his defense. Additionally, Weckman moved to admit evidence of AW's previous accusations of sexual abuse against her maternal grandfather. The trial court denied the motion to admit the evidence under Kentucky Rule of Evidence ("KRE") 412 which generally excludes evidence of the victim's other sexual behavior or predisposition.

The case proceeded to a jury trial. Ultimately, the jury convicted Weckman on all four counts, and the trial court sentenced him to twenty years in prison consistent with the jury's recommendation. Weckman now appeals as a matter of right. Weckman alleges four errors in the trial process: 1) the jury instructions for the two acts of incestuous rape violated the unanimity in verdict requirement; 2) the trial court erred in excluding the CPS records; 3) the prosecution erred by accusing Weckman of lying when he did not testify; and 4) the prosecutor erred in arguing a text message showed Weckman's guilty conscience. We discuss each claim in turn.

**ANALYSIS**

## I. The jury instructions did not create a unanimity error.

Weckman's first argument is that the two incidents of rape were not distinguished sufficiently in the jury instructions and therefore resulted in a unanimity error. Weckman objected to the Commonwealth's originally tendered instructions as well as those ultimately issued by the trial court. Accordingly, this issue is preserved. RCr 9.54(2). We review preserved

5

allegations of unanimity errors using the harmless beyond a reasonable doubt standard. *Staples v. Commonwealth*, 454 S.W.3d 803, 827 (Ky. 2014).

The two sexual assaults were primarily differentiated by dates of occurrence and AW going to the bedroom for candy or her phone. Here, the jury instructions contained two counts of rape and two counts of incest. The first rape and incest instructions included a date range of October 15–November 7 and referred to the "Halloween" incident. The second rape and incest instructions included a date range of November 1–November 7 and were meant to refer to the "November 4th" incident.

By way of background, both parties initially proposed different jury instructions to the trial court. The Commonwealth proposed the same date range for all counts, October 15–November 7, but added the additional detail of Weckman licking AW's breast during the second incident in each of the instructions for the second counts of rape and incest. Weckman proposed instructions that included singular dates, October 31 and November 4, for each instruction. The trial court then offered its own proposal, with identical date ranges for each charge. The prosecution expressed concern that this would lead to a unanimity error. The judge proceeded to discuss the instructions with both parties extensively to construct them in a way that avoided any unanimity issues.

These discussions led to the date ranges for the Halloween incident including October—October 15, 2017 through November 7, 2017—and the date range for the second rape including only November dates—November 1, 2017

6

through November 7, 2017. In other words, only the first two jury instructions regarding the Halloween incident included October dates, and the second two instructions for the November 4th incident only included November dates. In its opening and closing arguments the prosecution stated Weckman raped the victim twice, once around Halloween 2017 and once a few days after Halloween. AW's testimony also reflected these two occurrences, as well as Detective Guffey's testimony that the first rape occurred on October 30 or 31 and the second on November 4th.

Weckman argues on appeal that the overlap in the date ranges on the jury instructions deprived him of his right to a unanimous jury verdict. This Court recognizes three types of unanimity errors. *Cox v. Commonwealth*, 553 S.W.3d 808, 811-12 (Ky. 2018). The type at stake here "occurs when multiple counts of the same offense are adjudicated in a single trial." *Id.* at 812 (quotation omitted). In *Harp v. Commonwealth*, 266 S.W.3d 813, 817-18 (Ky. 2008), this Court held that a unanimity error occurs when multiple counts of the same offense are tried in the same case and there is not some kind of "identifying characteristic" in each jury instruction. To prevent this type of unanimity error, "the Commonwealth must introduce evidence sufficient to prove each offense and to differentiate each count from the others, and the jury must be separately instructed on each charged offense." *Miller v. Commonwealth*, 77 S.W.3d 566, 576 (Ky. 2002).

We find the instructions did not create a unanimity error. While Weckman sites *Harp*, 266 S.W.3d at 817-18, in which this court reversed a

7

conviction due to a unanimity error, it is important to note the jury instructions in *Harp* were completely identical with no differentiation, and the date range spanned over two years given the defendant's persistent pattern of abuse. The jury instructions here were crafted mindful of the need to differentiate between the two rape incidents and are not identical. While there is minimal overlap in the date ranges in each instruction, there is no confusion that two successive incidents in time are the subject of consideration. There was sufficient testimony distinguishing these incidents.

In *Bennington v. Commonwealth*, 348 S.W.3d 613, 623 (Ky. 2011), we held that overlapping date ranges do not inherently cause a unanimity issue so long as "[e]ach instruction refers to a factually distinct crime." In that case, multiple counts of sodomy, rape, and incest were charged with jury instructions that contained date ranges overlapping by one month each (e.g., "between May 1981 and May 1982 . . . between May 1982 and May 1983 . . . between May 1983 and May 1984 . . . ."). *Id.* at 622-23. This overlap was more significant than the seven-day range in Weckman's case and the Court concluded that the instructions did not deprive the defendant of jury unanimity. *Id.* at 623.

Appellant argues that *Bennington* was overruled by *Johnson v. Commonwealth*, 405 S.W.3d 439, 450-51 (Ky. 2013). However, *Johnson* does not refer directly to *Bennington* and clearly does not rise to the level of overruling precedent. *Johnson* involved a single charge covering multiple acts. *Bennington*, like the case before us, concerns multiple charges for multiple acts

8

with overlapping date ranges. *Johnson*, 405 S.W.3d at 449; *Bennington*, 348 S.W.3d at 622-23. Given the factual similarities with this case, *Bennington* controls and supports the conclusion that Weckman was not deprived of his right to a unanimous jury verdict. *Bennington*, 348 S.W.3d at 623.

This Court has also previously held that "proof of the precise dates on which the offenses were committed is not required of a child sexual abuse victim where the evidence is 'ample to separately identify the various offenses charged.'" *Miller*, 77 S.W.3d at 576 (quoting *Hampton v. Commonwealth*, 666 S.W.2d 737, 740 (Ky. 1984)). We confirmed in *King v. Commonwealth*, 554 S.W.3d 343, 355 (Ky. 2018) (citing *Ruiz v. Commonwealth*, 471 S.W.3d 675, 679 (Ky. 2015)), that "any differentiation in the [jury] instructions, however slight, would suffice as long as it is based upon evidence distinguishing each crime from the others."

Here, the two instances of rape and incest were presented throughout the trial by witness testimony as the "Halloween incident" and the "November 4th incident." Detective Guffey asked Weckman about those two separate incidents during his first interview. AW's story remained consistent at trial, testifying to these same two incidents. We do not find the issues were confused by the date ranges provided in the instructions. Accordingly, we do not find that any unanimity error occurred in this case.

## II. The trial court did not err in excluding the CPS records from trial.

Weckman argues the trial court erred in excluding 58 pages of AW's CPS records from the post-rape period. He believes the records show that AW

9

engaged in lying behavior and visited inappropriate websites on her phone while in a family placement and foster care following the incidents. He also alleges he should have been allowed to review the records because they may have led him to request a psychological examination of AW. Finally, Weckman argues that the trial court improperly precluded him from reviewing CPS records pertaining to AW's previous sexual assault allegation against her maternal grandfather. Generally, he alleges that the exclusion of these records deprived him of his right to raise a defense and withheld evidence relevant to AW's credibility. We discuss each argument, including preservation, in turn.

Weckman's allegation that the trial court erred by excluding the 58 pages of CPS records is preserved. In response to the trial court's pre-trial order for discovery, the Commonwealth stated it had 58 pages of CPS records from the post-rape period but indicated that none of the records contained exculpatory information that would thereby be subject to discovery pursuant to Rule of Criminal Procedure (RCr) 7.24. During a pre-trial hearing the Commonwealth explained that, out of an abundance of caution, it would submit the records to the trial court.[2] The trial court asked defense counsel if he acquiesced to the trial court reviewing the sealed CPS documents *in camera* and deciding whether the defense was entitled to any portion of the records. Weckman agreed to this process, and specifically asked the trial court to look out for exculpatory and impeachment evidence regarding AW's ability to testify

---

[2] Notably, and relevant to the discussion of Weckman's belated request for a psychiatric evaluation on appeal, the Commonwealth indicated that Weckman had not yet requested a psychiatric evaluation of AW.

competently under oath. The trial court explained that it typically makes those considerations when conducting an *in camera* review pursuant to *Commonwealth v. Barroso*, 122 S.W.3d 554, 564 (Ky. 2003), which provides standards for *in camera* review of psychological records.

The trial court then reviewed *in camera* the 58 pages of CPS records about AW's experience and behavior after the rapes occurred. Upon review, it concluded that the records did not contain evidence probative of AW's ability to recall, comprehend, or accurately testify. Critically, the trial court determined the records contained nothing exculpatory.

Pursuant to *Barroso*, 122 S.W.3d at 564, "[i]f, as here, discovery is denied, a conviction occurs, and an appeal is taken, the appellate court, upon request, can review the records and determine whether the trial judge's ruling was an abuse of discretion." The test for abuse of discretion is "whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999). Weckman agreed to the *in camera* review process and therefore this alleged error is preserved. Having reviewed the CPS records, we do not find that the trial court abused its discretion.

Importantly, the 58 pages of CPS records in question contain a psychological evaluation of AW that occurred a year and a half after she disclosed Weckman's abuse. They also contain records of AW's behavior in foster care between November 7, 2017 and June 28, 2019—again after the incidents. The psychologist concluded that AW had anxiety problems and

11

symptoms consistent with a mood disorder and Post-Traumatic Stress Disorder ("PTSD"). The evaluation contained some evidence of attention-seeking behavior, as did the reports from her time in foster care. Additionally, the report indicates possible hallucinations that AW denied. The records also contain statements from Samantha Rishel, Weckman's niece and AW's guardian after Weckman's abuse, that assert AW was accessing inappropriate websites, viewing pornography, and lying about several things.

Appellant argues that the CPS records point to AW's propensity for truthfulness or untruthfulness and were therefore admissible under KRE 608. The CPS records outline AW's behavior after the rapes occurred. As a result, they only provide information about her state of mind after the offenses. Psychological problems following rape are not unusual. The issue here is whether the trial judge abused his discretion in excluding this evidence. We do not find that his decision was "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *English*, 993 S.W.2d at 945.

As an extension of the alleged error regarding exclusion of the post incident records, Weckman argues that he is entitled to have AW evaluated by a psychological expert. He asserts because of the exclusion of the post-rape CPS records, he had no basis to request an evaluation. Nevertheless, this issue is unpreserved for our review. "[A] new theory of error cannot be raised for the first time on appeal." *Commonwealth v. Steadman*, 411 S.W.3d 717, 724 (Ky. 2013) (quoting *Springer v. Commonwealth*, 998 S.W.2d 439, 446 (Ky. 1999)). Therefore, this issue was waived.

12

Weckman compares his case to *Mack v. Commonwealth*, 860 S.W.2d 275, 277 (Ky. 1993). In *Mack,* the trial court denied the defendant's request to have the child victim psychologically examined. On appeal, this Court concluded that the defendant was entitled to have the victim examined by a psychologist. *Id.* Applying the rationale in *Mack,* this Court also found reversible error in *Perry v. Commonwealth*, 390 S.W.3d 122, 128 (Ky. 2012), another case in which trial judge denied a defendant's request to have a child victim psychologically evaluated.

Notably, the defendants in *Mack* and *Perry* both specifically requested a psychological evaluation during the trial court proceedings. In this case, Weckman made no request for an evaluation, and there was no evidence from witnesses that AW had a propensity to lie or had an inability to testify accurately. His only basis for asking now is alleged behavior after the incident. If his trial strategy was that AW was untruthful, he had sufficient suspicion and ample time to request a psychological evaluation. Accordingly, we do not find that any error occurred.

Weckman's final argument regarding the admission of evidence is that the trial judge improperly prohibited him from accessing CPS records about AW's previous allegations of sexual assault against her maternal grandfather. Before trial, Weckman made a motion pursuant to KRE 412 declaring his intention to introduce evidence of the previous allegations. Likewise, the Commonwealth sought to exclude evidence of the prior incidents. Therefore, this issue is preserved. During a hearing before the trial court on this motion,

13

both parties presented arguments. The trial court ultimately determined that Weckman failed to present proof to meet his burden and excluded the evidence in question. We review alleged errors regarding the admission or exclusion of evidence for an abuse of discretion, reversing only if the "trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *English,* 993 S.W.2d at 945.

In *Dennis v. Commonwealth,* 306 S.W.3d 466, 472 (Ky. 2010), the defendant sought to cross-examine the victim about a prior sexual misconduct allegation. This Court held that evidence of a prior accusation of sexual misconduct is admissible in narrow circumstances where the proponent of the evidence makes a preliminary showing that the accusation is demonstrably false. *Id.* The Court reasoned that such admission does not violate KRE 412, the rape shield law, because a false accusation does not involve any sexual behavior. *Id.* However, the Court recognized the importance of preventing this from becoming an avenue for defendants to circumvent KRE 412. *Id.* To protect the victim from baseless attacks on her credibility and sexual history, we adopted the "demonstrably false" standard. *Id.* at 472-73. If a defendant seeks to introduce evidence of a victim's previous sexual misconduct allegation, the defendant must first make a showing "that there is a distinct and substantial probability that the prior accusation was false." *Id.* at 475. If the defendant shows that the prior allegation is demonstrably false, and thus not barred by KRE 412, the trial court must still determine whether the evidence is admissible pursuant to KRE 608 and KRE 403. *Id.*

14

In *Dennis,* the trial court conducted a pre-trial admissibility hearing, and the defendant questioned the Cabinet for Health and Family Services ("CHFS") employee who investigated the victim's prior allegations and ultimately closed the case file. *Id.* The trial court concluded that the defendant failed to establish the allegations were demonstrably false and this Court agreed because the testimony established "no more than that the alleged perpetrators had denied any wrongdoing and that otherwise the allegations could not be substantiated." *Id.* at 476. However, because the trial court did not review records surrounding the prior allegation incident, as specifically requested by the defendant, the Court remanded the case, requiring production of the records and *in camera* review by the trial court. *Id.* "If, notwithstanding the investigator's testimony, those records establish demonstrable falsity, if the evidence is 'probative of truthfulness or untruthfulness' pursuant to KRE 608(b), and if that evidence survives the KRE 403 balancing test, then Dennis must be granted a new trial at which he will be allowed to cross-examine S.J. about the 2001 false report." *Id.*

Unlike in *Dennis,* the trial court in this case held a hearing. Weckman moved to admit evidence of AW's previous allegations before the trial and the judge considered his motion during a pre-trial hearing. Weckman argued that he had several witnesses willing to testify that the previous accusations were false. The prosecution argued that the CPS records relating to those accusations supported the veracity of AW's claims. The prosecution argued that the matter went to family court, and the case involved four children who

15

made accusations against AW's maternal grandfather. In fact, all the children, including AW, were removed from the home by a family court judge. Weckman failed to meet his burden of showing that the previous allegations were "demonstrably false." Accordingly, we find the trial judge did not abuse his discretion in denying the motion to introduce this evidence.

Additionally, Weckman argues that the trial court further erred by not reviewing the CPS records from AW's previous sexual assault allegation against her maternal grandfather. We disagree. The prosecution had the CPS records and referenced the records in arguing that evidence of AW's prior allegation should be excluded from trial. In *Dennis*, 306 S.W.3d at 477, the trial court failed to review relevant CHFS records, and we remanded the case so that the trial court could conduct a review. Here, Weckman never asked that the trial court review the CPS records of AW's previous accusations. Both sides had an opportunity to address these concerns during the hearing on this evidence. Weckman argues that he mistakenly believed they were included in the 58 pages of records that the trial court did review, yet this belief is erroneous on its face because he knew the dates for the records reviewed in camera were after AW disclosed Weckman's abuse. We find no error in the trial courts' handling of this hearing or ruling regarding this issue.

### III. The prosecutor's comments in closing argument about Weckman's lies were not misconduct.

Appellant argues that the prosecution repeatedly accused him of lying in its closing argument, which constituted misconduct and deprived him of a fair trial. Weckman acknowledges in his brief this argument is unpreserved

16

because he did not object to the prosecution's statements at trial. Because Weckman's allegations of prosecutorial misconduct are unpreserved, we reverse only if the conduct was both flagrant and constitutes palpable error resulting in manifest injustice. RCr 10.26; *Matheney v. Commonwealth,* 191 S.W.3d 599, 606, 607 n.4 (Ky. 2006).

In examining allegations of prosecutorial misconduct, we first ask whether the prosecutor's conduct was improper. *Mayo v. Commonwealth*, 322 S.W.3d 41, 56 (Ky. 2010). If it is not improper, there is no error. *Id.* If it is improper, we examine the conduct using four factors: "(1) whether the remarks tended to mislead the jury or to prejudice the accused; (2) whether they were isolated or extensive; (3) whether they were deliberately or accidentally placed before the jury; and (4) the strength of the evidence against the accused." *Id.* If the factors cut in favor of the Appellant, we then further evaluate the trial as a whole to determine whether the improper comments undermined the essential fairness of the trial. *Id.* at 57. This analysis should focus on "the overall fairness of the trial, and not the culpability of the prosecutor." *Slaughter v. Commonwealth*, 744 S.W.2d 407, 412 (Ky. 1987).

We first look to whether the comments were improper. Weckman alleges that the Commonwealth suggested he lied ten different times during closing argument. He argues that these statements were baseless and misled the jury to believe he was a liar. He additionally asserts that the comments were improper because he did not testify at trial. In *Padgett v. Commonwealth*, 312 S.W.3d 336, 352 (Ky. 2010), we held:

17

> Consistent with the general rule that in closing arguments counsel may make reasonable inferences based on the evidence, the Commonwealth may suggest that a defendant was lying if this is a reasonable inference. To make this a reasonable inference, the defendant must take the stand and there must be discrepancies between the evidence and the defendant's testimony.

(Internal citation omitted). Weckman interprets this language to mean that the prosecution cannot call the defendant a liar unless the defendant takes the stand. Here, unlike *Padgett*, the defendant did not take the stand. In addition, the prosecution did not call Weckman a "liar." Because Weckman did not testify, we are presented with the question of whether the prosecution can draw a reasonable inference of dishonesty from statements the defendant made in evidence. Longstanding precedent explains that both parties have wide latitude in closing arguments and may draw reasonable conclusions from the evidence. *Padgett*, 312 S.W.3d at 350; *Dickerson v. Commonwealth*, 485 S.W.3d 310, 331 (Ky. 2016).

We do not find the Commonwealth's comments improper. This Court declines to extend *Padgett* to hold that in cases where the defendant does not take the stand, the prosecution may not point out inconsistencies in the evidence. In fact, this would be an absurd result.

Albeit in an unpublished decision, in *Smith v. Commonwealth,* No. 2006-SC-0896-MR, 2009 WL 427322, *1 (Ky. Feb. 19, 2009), this Court was confronted with allegations of prosecutorial misconduct in a child sexual abuse case because the prosecutor highlighted inconsistencies in a defendant's position and claimed the defendant lied, despite the defendant not testifying. During opening argument, the Commonwealth stated that the defendant's

18

"explanation did not make sense" and the defendant objected. *Id.* at *3. The defendant also objected during closing argument when the Commonwealth characterized the defendant's explanation for a sex act as a lie and the Commonwealth used the word "lie" twice during this statement.[3] *Id.* In reviewing both instances, this Court reasoned that "the prosecutor was appropriately commenting 'on evidence' and 'as to the falsity of a defense position.'" *Id.* (quoting *Slaughter,* 744 S.W.2d at 412).

The defendant in *Smith* also argued that the Commonwealth telling the jury that "to believe Smith in this case, you would have to believe that [the victim] is a pathological liar, even though the social workers, police, and prosecutor all believe her" constituted prosecutorial misconduct. *Smith,* 2009 WL 427322 at *4. This Court held that by referencing the testimonies of the social workers and police, the Commonwealth merely referenced evidence supporting its theory that the victim was telling the truth and the defendant was lying. *Id.* at *5. The Court also reiterated that a prosecutor is entitled to comment on "the falsity of a defense position." *Id.* As a result, none of these comments regarding lies or inconsistencies were deemed to rise to the level of prosecutorial misconduct.

Weckman frequently contradicted himself in his interviews with Detective Guffey. His text messages, the evidence retrieved from his home, and

---

[3] This Court determined that the first allegation of prosecutorial conduct for the statement made during opening argument was preserved, but that the second allegation of prosecutorial misconduct during closing argument was unpreserved because the defendant did not request a specific admonition or mistrial. *Smith,* 2009 WL 427322 at *3.

19

the testimony of other witnesses all reasonably support a conclusion that he gave conflicting information. The prosecution may draw reasonable inferences from the evidence and make an argument about Weckman's dishonesty. When a defendant does not testify, a prosecutor must ensure that her argument that the defendant lied is grounded in evidence so that the jury knows the prosecutor is "comment[ing] as to the falsity of a defense position" and not telling the jury to find the defendant guilty simply because of his general lying or inconsistent nature. *Slaughter,* 744 S.W.2d at 412. Further, Weckman's counsel admitted in his closing argument that Weckman lied. We also must always consider the Commonwealth's closing argument as a whole. *Padgett,* 312 S.W.3d at 350. Here, the Commonwealth's closing argument was approximately 53 minutes long, rendering the references to Weckman's inconsistencies or lies infrequent. Given that the prosecution's comments were not improper, we need not determine whether the comments were flagrant.

Appellant next argues that the prosecution acted improperly by playing a clip from Weckman's second interview with Detective Guffey where the Detective accused Weckman of not being honest with him. Weckman alleges that this behavior violated the general rule that a witness should not characterize the statements of another witness as a lie. *Lanham v. Commonwealth,* 171 S.W.3d 14, 23 (Ky. 2005). That rule stems from KRE 608(a) which limits the admissibility of evidence pertaining to a witness's credibility. *Id.* However, we established in *Lanham* that questioning the defendant's honesty in an interview with police is a legitimate interrogation

20

technique. *Id.* at 27. That technique is "aimed at showing the defendant that the officer recognizes the holes and contradictions in the defendant's story, thus urging him or her to tell the truth." *Id.*

It is acceptable to show footage of those comments during trial because it provides necessary context for a defendant's responses. In *Lanham,* we recommended issuing a limiting admonition before the showing of evidence where a detective questions the defendant's honesty, but this is only required when the defendant asks. *Id.* at 28-29. The failure to deliver such an admonition unprompted does not constitute reversible error. *Id.* Here, Weckman did not testify so Detective Guffey was not commenting on the truthfulness of another witness's statements. Even if Weckman had taken the stand, Guffey's interview employed an accepted interrogation technique and showing it to the jury provided helpful context for Weckman's statements.

Additionally, Weckman raises this claim as an issue of prosecutorial misconduct even though it revolves around the admission of evidence. We held in *Stopher v. Commonwealth,* 57 S.W.3d 787, 806 (Ky. 2001), that issues involving the admission of evidence cannot be prosecutorial misconduct unless the prosecutor knowingly proffers false evidence. Evidentiary rulings regarding admissibility are squarely within the sound discretion of the trial judge. Because the prosecutor did not knowingly submit false evidence, the admission of this video clip does not constitute prosecutorial misconduct.

21

**IV.    The prosecutor's comments about the "smoking guns" text messages were not misconduct.**

Appellant's last argument is that the prosecution acted improperly when it used Weckman's text messages to Jenny on the way to the hospital as its "smoking gun" in its closing argument.  This issue is not preserved on appeal because Weckman did not object to the prosecutor's statements during the trial.  Prosecutorial misconduct claims are only preserved if the defendant objects at trial.  *Miller v. Commonwealth*, 283 S.W.3d 690, 704 (Ky. 2009).  We therefore review, first, as to whether improper, before reviewing for flagrancy.  *See supra* Section III.

At trial, the prosecution presented evidence that on the way to the hospital, with no knowledge of why AW was there, Weckman sent Jenny the following two text messages: (1) "I swear if she has said anything that me or dad has done anything this is going to be a lot of shit started and she will go to a fucking foster home and I will lose her." (2) "Now I'm fucking scared that either me or dad will be locked up for shit she is saying or doing because she likes to lie about shit."  During closing argument, the Commonwealth claimed these text messages were "smoking guns" as evidence that Weckman abused AW.  The Commonwealth asked the jury to consider why a parent would assume his child made sexual assault allegations against him upon hearing that the child was taken to the hospital after a fight at school.

Weckman alleges that there was an alternate explanation for why he sent those messages, and that he was prevented from sharing that explanation due to KRE 412.  He notes the trial court's ruling that evidence of AW's previous

22

allegations was inadmissible, and that, as a result, the Commonwealth was able to purposefully mislead the jury. Weckman asserts that he sent those texts because he believed that AW's previous allegations of sexual assault against her maternal grandfather were false, and he feared she would make false allegations against him or his father. He also argues that the CPS records of AW's previous allegations support his assertions and that he was kept from raising this defense because those records were deemed inadmissible.

Weckman primarily relies upon *Brafman v. Commonwealth*, 612 S.W.3d 850, 860-63 (Ky. 2020), in support of this argument. In *Brafman*, we held that the prosecutor committed misconduct by knowingly deceiving the jury as to the intoxication of the defendant at the time of the offense. *Id.* The prosecutor knew of the defendant's intoxication but told the jury that there was no evidence the defendant was intoxicated when she committed the crimes in question. *Id.* Weckman's reliance on *Brafman* is misplaced. Here, the judge ruled that evidence of AW's previous allegations against her maternal grandfather were inadmissible and irrelevant under KRE 412. The Commonwealth's comments in its closing argument did not purposefully deceive the jury the way the prosecutor did in *Brafman*, 612 S.W.3d at 863.

In any event, according to the Commonwealth the excluded CPS records did not contain information that AW's previous allegations of abuse were false, and in fact, showed that they were substantiated. During Weckman's interviews with Detective Guffey, Weckman offered multiple reasons for why he sent those text messages. Only once did he assert anything close to his claim

23

that he was worried because of AW's previous allegations. He would have absolutely known his own motive for making these statements at the time of this interview. This statement was well in advance of any evidentiary rulings by the trial court. When the prosecution implied that Weckman's text messages indicated he had indeed abused AW, it was using the latitude afforded to it to draw reasonable inferences from the evidence presented in closing arguments. *Padgett*, 312 S.W.3d at 350; *Dickerson*, 485 S.W.3d at 331. The Commonwealth's comments were not improper, and we therefore decline to proceed to whether the conduct was flagrant.

Finally, Weckman argues that the prosecution's comments about his text messages to Jenny constitute an impermissible golden rule argument. This kind of argument is "one that urges the jurors collectively or singularly to place themselves or members of their families or friends in the place of the person who has been offended and to render a verdict as if they or either of them or a member of their families or friends was similarly situated." *Lycans v. Commonwealth*, 562 S.W.2d 303, 305 (Ky. 1978). These arguments are prohibited because they manipulate the emotions of the jury and try to coerce the jury to rely upon their sympathy instead of the facts. *Id.* at 306. In *Stopher*, 57 S.W.3d at 806, we held that a prosecutor's comments did not violate the golden rule when they did not ask the jury to put themselves in the shoes of the victim or glorify the victim.

Here, the prosecution asked the jury why a parent would think their child was making allegations against them "unless you knew you were guilty."

24

Weckman alleges this improperly asked the jury to place themselves in the shoes of AW's parent and consider why he would have sent those texts to Jenny on the way to the hospital. The statement called on the jury to exercise its common sense. This is not a golden rule argument. The prosecution did not ask the jury to sympathize with AW, the victim, or ask the jury to sympathize with the victim's family. We therefore do not find any error in the prosecution's comments about Weckman's text messages in the closing argument.

## CONCLUSION

In accordance with the above reasons, we affirm the judgment and sentence of the Jefferson Circuit Court. We find no unanimity error, no improper evidentiary rulings, and no prosecutorial misconduct warranting reversal.

All sitting. All concur.

25

COUNSEL FOR APPELLANT:

Christopher Barrett Thurman
Louisville Metro Public Defender's Office

COUNSEL FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Alexander Y. Magera
Assistant Attorney General